## MARY A. BATES *vs.* ISAAC W. BARBER.

The question of a witness's reputation for truth and veracity is one of fact to be tried by the jury; and it is not competent for the court to institute or allow a preliminary examination of the impeaching witnesses, as to their knowledge and means of knowledge of the reputation of the witness sought to be impeached, and, thereupon, to receive or reject their testimony, according as the court are satisfied, or not, that the witnesses have the requisite knowledge to enable them to testify to the fact in question.

Where it does not appear, that a witness rejected as incompetent knew or could testify to any thing relevant to the issue on trial, such rejection is not a valid ground of exception.

An impeaching witness may be asked, on cross examination, to state the names of all persons, whom he has heard speak against the reputation of the witness impeached.

Where a witness is called to testify against the reputation of another witness for truth and veracity, he can only be inquired of as to what he has heard, and cannot be asked, " Whether, from the treatment and conduct of the community generally towards the witness sought to be impeached, he knows enough about his general character to say what it is for truth and veracity."

Evidence having been introduced tending to prove a conspiracy between the defendant and one K., to hire a witness to commit perjury on the trial; and that K., who was an inhabitant of another state, had been requested to attend the court as a witness, but was not present; it was held, that the defendant could not, on the cross examination of a witness who had testified that he was a near neighbor of K., and had seen him every day during the week of the trial, inquire whether K. was a member of a church in the place where he lived.

THIS was an action on the case for slander, which was tried before *Wells*, C. J., in the court of common pleas, and argued in writing in this court, upon exceptions to certain rulings of the court below, by *G. Ashmun*, for the defendant, and *W. G. Bates*, for the plaintiff. The questions presented by the bill of exceptions are sufficiently stated in the opinion of the court.

FLETCHER, J. This was an action on the case for slander, originally tried in the court of common pleas, and brought into this court on exceptions. The first exception was not insisted upon at the argument. The second exception was as follows: The defendant called several witnesses, to prove that the character of one Adams, a witness for the plaintiff, was bad for truth and veracity. The court prescribed the following course for the examination of the witnesses namely: they must first be examined as to their knowledge

and means of knowledge of the character of the witnesses attempted to be impeached. In this examination, the counsel on both sides might participate. After this preliminary examination, it was for the court to decide whether the witness possessed sufficient knowledge of the character of the witness to be impeached, to render him competent to testify concerning it. Two witnesses were examined and admitted under this rule. The defendant then called one Marjoram to the same point, and the court required the same preliminary examination; which having been made, the judge not being satisfied that the witness had sufficient knowledge to qualify him to testify, he was excluded. The exclusion of this witness forms the ground of the second exception.

There can be no doubt, that the ruling of the court below, as to the preliminary examination to determine the competency of the witnesses, was erroneous. There is no question of competency for the court to settle, in regard to the knowledge of witnesses called to testify to the point of reputation for truth and veracity. The whole examination is before the jury, as to a matter of fact merely. It is not like the case of experts, who are called to give opinions, and whose qualifications to give such opinions must be first examined and decided upon by the court. What is the reputation of a witness for truth and veracity, is a simple question of fact; and there is no more reason for the court to make a preliminary examination as to the knowledge of witnesses called to testify to this fact, than there is for making such examination as to the knowledge of witnesses called to testify to any other fact. All witnesses, competent to testify to any fact in the case, are competent to testify to the fact of reputation for truth; and the inquiry as to the amount and means of this knowledge is for the jury, in order to enable them to satisfy themselves as to the weight and importance of the testimony.

But though the ruling of the court, as to the preliminary examination, was erroneous, there is no sufficient ground to sustain the exception; for the reason, that it does not appear that the witness who was excluded knew any thing, or

Bates *v.* Barber.

would say any thing whatever, in regard to the character for truth of the witness intended to be impeached. It not appearing that the party can have been at all prejudiced by the exclusion of this witness, no sufficient case is made in that respect for disturbing the verdict.

In the cross examination of impeaching witnesses, the plaintiff's counsel were permitted to require the witnesses to state the names of all the persons whom they had heard speak against the impeached witness's character. To this the defendant excepts, and this forms the third exception.

Upon this point, there is a difference of opinion among the members of this court; but in the opinion of a majority, the inquiry, upon a cross examination, as to the names of persons who had spoken against the character of the witness impeached, was well warranted by principle, by the course of practice, and by the authorities. According to the impression and recollection of a majority of the court, it has been common in the course of practice to make such inquiry upon cross examination. In point of principle, it would seem proper to make this inquiry, because the witness is called on to state what is the reputation of the person impeached; what is his character for truth by report; what is said as to his character for truth; and it may be very material and important to know from whom in particular the reports come, and what persons they were who spoke against the character of the person impeached. Upon such inquiry, it may appear that all the persons, from whom the witness has heard any thing against the person impeached, are his personal enemies, and so situated in regard to him, that their speech and reports against him are entitled to no consideration whatever. The inquiry may also be proper, in order to test the extent and means of information possessed by the witness, in regard to the character of the party impeached for truth and veracity. By allowing such inquiry, it may perhaps be made to appear that the imputed bad character is wholly factitious, and got up for a particular purpose.

It seems to be well settled, that whenever general evidence

is given impeaching the credit of a witness, the opposite party may go into a cross examination to ascertain the grounds of the unfavorable opinion expressed, and in doing so, may interrogate the witness as to his opportunities for knowing the character of the .impeached witness; how long a time generally the unfavorable reports have prevailed; and from what particular individuals they heard them. *Lower* v. *Winters*, 7 Cow. 263; *Wadsworth* v. *Pacific Ins. Co.* 4 Wend. 33; *State* v. *Howard*, 9 N. H. 485; 2 Phillips's Ev. Cowen & Hill's Notes, 770. From the nature of the case, a good deal of latitude may very properly be allowed on a cross examination.

The next and fourth exception is to the following ruling: The defendant asked one of his witnesses, whether from the treatment and conduct of the community generally towards the witness sought to be impeached, and the remarks made about him, he knew enough about the general character of such witness, to say what it was for truth and veracity. This question was objected to by the plaintiff, and the court ruled that it should be so altered, as to confine the witness to what he had heard; and that in answering the question, he should not take into account the treatment and conduct of the community towards the person sought to be impeached.

This ruling was surely in perfect accordance with the well-settled and familiar rule of law upon the subject. The proper inquiry of the witness was, what was the reputation for truth and veracity of the person impeached, that is, what was his character in this respect, by report; what was said in regard to it. This was the proper inquiry, and the only proper inquiry; and to this inquiry the witness was permitted fully to answer. For a witness to undertake to say what is the character of an individual for truth and veracity, from the "treatment and conduct of the community generally towards him," would be quite too speculative and conjectural.

The fifth and last exception was as follows: The plaintiff introduced testimony tending to prove a conspiracy between the defendant and one King, to hire one Adams to commit

perjury in this case; and that King, who lived in Sheffield, Connecticut, ten miles distant, had been requested to attend as a witness, but was not present. The plaintiff called a witness, who testified, among other things, that he lived next door to King, and had seen him every day during the week of the trial. The defendant, on cross examination, asked this witness, if he did not know that King was a member of a church in Sheffield. The plaintiff objected to this question, and the court sustained the objection. To this ruling the defendant excepted. The ruling was undoubtedly correct. The inquiry was wholly irrelevant and immaterial.

*Exceptions overruled, and judgment on the verdict*