THE STATE OF KANSAS V. JOHN NELSON.

No. 12,936. (70 Pac. 632.)

SYLLABUS BY THE COURT.

MURDER—*Self-defense—Erroneous Instruction.*   On a trial for murder, where the defendant relied on the defense of self-defense, an instruction stating, in substance, that if the defendant shot and killed his assailant under the reasonable belief that he was in immediate danger of death or great bodily harm at the hands of his assailant, the jury would be justified in finding the defendant not guilty, is erroneous, as the circumstances and conditions stated made it a case of justifiable homicide; and there should have been a clear and unequivocal direction to acquit the defendant, instead of a permission to do so, or a statement that a finding of not guilty was justifiable or defensible.

Appeal from Montgomery district court; THOS. J. FLANNELLY, judge.   Opinion filed November 8, 1902. Reversed.

*J. H. Dana*, county attorney, *H. C. Dooley*, and *Ergenbright & Piper*, for The State.

*J. H. Keith*, and *J. B. & W. E. Ziegler*, for appellant.

The opinion of the court was delivered by

JOHNSTON, J.: In an encounter between Albert Morris and John Nelson, at Coffeyville, on September 4, 1901, the latter shot and killed Morris. Nelson was prosecuted on a charge of murder, and was convicted of manslaughter in the second degree. On the trial and on this appeal, he claimed that it was justifiable homicide. They were brothers-in-law, but their relations had been unfriendly for some time before the encounter, and defendant claimed that on several occasions Morris had threatened to kill him, and came to Coffeyville on the day of the tragedy for that purpose. He claimed, and offered testimony to prove,

44—65 KAN.

that Morris went directly to the livery barn where defendant's horses were, and that when the latter went to the barn Morris stood in the door with an open knife. To avoid meeting Morris he left the barn, made preparations to leave Coffeyville, and, when about to start for home and as he was passing down the street toward the barn with a bundle in his arm, he saw Morris standing on the sidewalk looking toward him; that he went to the edge of the walk farthest from Morris, and had passed him when the latter advanced and assaulted him with a knife. After Morris had struck Nelson, and several times had knocked him to his knees, defendant drew his revolver and fired several shots, one of which struck and killed Morris.

At the trial, over the objection and exception of the defendant, the court gave the following instruction as to self-defense:

"Where one without fault is placed under such circumstances sufficient to excite the fears of a reasonable person that another designs to commit a felony or some great bodily injury upon him, and affords grounds for a reasonable belief in the mind of the assailed that there is imminent danger of the accomplishment of such design, he may, acting under the fears alone, slay his assailant and be justified by the appearances; and as, where the attack is sudden and the danger imminent, he may increase his peril by retreat, so situated, he may stand his ground and slay his assailant, even if it is thereafter proved that he might more easily have gained his safety by flight.

"On a trial for murder, if the defendant relies on a supposed necessity for the killing as a justification or excuse, the rule to be applied is that the accused must have believed, at the time he fired the fatal shot or shots, that he was in imminent danger of his life from the deceased, or of having great bodily harm

done by him, and this belief must rest upon reasonable grounds, and the party from whom the danger is apprehended must be making some attempt to execute his designs, or, at least, be in an apparent situation to do so, and thereby induce the reasonable belief in the mind of the accused that he intended to do so immediately.   You must determine from all the facts and circumstances proven in this case whether this condition of things existed at the time of the firing of the fatal shot or shots by the defendant, John Nelson.   If you find from the evidence that at the time the defendant fired the fatal shot or shots which killed the said Albert Morris, the defendant acted under the belief that he was in danger of immediate death or great bodily harm at the hands of said Albert Morris, and that the circumstances, including the mental condition of the defendant at that time, were such as to induce such belief in the mind of an ordinary prudent person, under the same circumstances, and that the defendant was under the reasonable belief of the necessity of firing the said shot or shots in order to avoid death or great bodily harm, you will be justified in finding the defendant not guilty.''

The vice of this instruction is that the jury are told that the facts and conditions recited therein would *justify* them in finding the defendant not guilty, when, if the facts and conditions suggested were found by the jury, it was a positive duty to acquit.   The statute in effect provides that a homicide is justifiable if committed by a person in the lawful defense of himself from an assault, when there shall be reasonable cause to apprehend a design on the part of his assailant to commit a felony or to do some great personal injury and there shall be immediate danger of such designs being accomplished. (Gen. Stat. 1901, § 1994.)   If the killing was justifiable, the jury had no discretion in the matter, and were bound to acquit the defendant. The instruction complained of apparently gave the

jury the discretion to acquit or convict, although the defendant may have shot and killed Morris when he believed, and had reasonable grounds to believe, that he was in danger of meeting death or great bodily harm at the hands of Morris. It is not enough to tell the jury that a finding of not guilty in such cases is justifiable or defensible—that they are warranted or at liberty to acquit where the homicide is justifiable—and the language used implies no more than that. Instead of giving the jury permission to find the defendant not guilty under such circumstances, there should have been a clear and unequivocal direction to acquit.

In a prosecution for murder, it is important that the charge should be so explicit and accurate as not to mislead the jury as to the law of the case or leave them in doubt as to their duty. It was especially important to the defendant in this case, as he was defending on the theory that he was under a reasonable apprehension of loss of life, or, at least, great bodily harm from the assault of Morris, and that the danger appeared to be so imminent that he had no alternative of escaping it, except by resistance with the weapon which he used. It is true, as the state claims, that in another instruction the court directed an acquittal where certain elements of the crime were not established, but the one criticized was the only one which applied the law of self-defense to the defendant. It was the only one which presented the doctrine that one assailed could act on apparent danger of his life, and on the belief of the necessity of firing the fatal shots for the protection of himself. In view of the defense that was made and the circumstances of the case, we cannot say that the erroneous instruction was not misleading and prejudicial, and that being true, the verdict should be set aside.

The defendant had cause to complain of the misconduct of the jury and the bailiff in charge of them. Without permission of the court or the consent of the defendant, the jurors were taken to a public barber shop, where they remained a considerable time, until all of them were shaved. Later, and after the jury had retired to deliberate on the verdict, the bailiff separated the jurors, taking ten of their number to a hotel for breakfast, and left two of them, who did not feel like going, in the jury-room. While the bailiff and the ten jurors were absent, the janitor entered the jury-room and did some work there. At this time no officer was in charge of the jury-room or the jurors left in it, and these things occurred without the permission or knowledge of the court. At another time the bailiff left the jury in their room and went to his home some distance away, where he remained a considerable time, during which no one was in charge of the jury. An effort, not entirely successful, was made to show that no prejudice resulted from the misconduct. There were serious irregularities which should never occur in any case, and especially in one where life and liberty are involved. Whether there were sufficient of these to overthrow a verdict it is not necessary to inquire, since there is to be a reversal on other grounds.

Some important and newly-discovered evidence was offered on the motion for a new trial, which was excluded because it was not produced and filed within a time fixed by a rule of the court. It appears that some of it could not have been obtained within that time, and, hence, the enforcement of the rule was exceedingly harsh. In such cases, and where parties appear to be acting in good faith, full opportunity should be given to the defendant to make a showing

in support of his motion before final judgment is rendered.

For the error mentioned the judgment will be reversed, and the cause remanded for a new trial.

All the Justices concurring.