THE STATE OF KANSAS v. JOHN NELSON.

No. 13,785.    (75 Pac. 505.)

SYLLABUS BY THE COURT.

1. EVIDENCE — *Testimony of Witness at Former Trial — Bill of Rights.* The fact that a witness against the defendant in a criminal case is outside of the state at the time of the trial, and therefore beyond the reach of process, authorizes the introduction in evidence of the testimony given by the witness at a former trial of the same case, notwithstanding an opportunity to subpœna the witness may have been neglected by the prosecution. The requirement of the bill of rights that the accused shall be allowed to meet the witness face to face is complied with in that he has already at the former trial been confronted by the absent witness, and at the later trial meets the witness who gives evidence of what such former testimony was.

2. HOMICIDE — *Instructions Concerning Threats by Deceased.* In a homicide case where self-defense was relied on by defendant, there was testimony of threats made against him by the deceased, some of which were communicated to him. The court instructed correctly as to the consideration to be given to threats as showing the state of mind of the deceased, but omitted any reference to the communication of the threats. No instruction as to communicated threats was asked. *Held,* not error.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed February 6, 1904. Affirmed.

The State v. Nelson.

*C. C. Coleman*, attorney-general, *Mayo Thomas,* *H. A. Scott*, *J. H. Dana*, and *H. C. Dooley*, for The State.

*J. H. Keith*, and *W. E. Ziegler*, for appellant.

The opinion of the court was delivered by

MASON, J. : John Nelson, charged with the murder of Albert Morris, was convicted of manslaughter in the second degree, and appeals. The principal claim of error is based upon the fact that the prosecution was permitted to introduce in evidence the testimony given by a witness at a former trial of the same case, such witness having left the state, and being therefore beyond the reach of process. It is argued by appellant that this was a denial of the constitutional right of the accused in a criminal prosecution to meet the witnesses face to face. *The State v. Foulk*, 57 Kan. 255, 45 Pac. 603, is cited as supporting this contention, but it does not reach the question at issue. There it was held to be error to admit in evidence, over the objection of defendant, the testimony given by a witness in a forner trial, but the record disclosed the fact that one objection made to it was that the whereabouts of the witness were known to the state and no reason had been shown why he was not produced. It was agreed that he was confined in the penitentiary, but this did not necessarily prevent his being brought into court. His imprisonment made him an incompetent witness, but this is an objection the defendant might have waived and apparently was disposed to waive. A reading of the opinion shows that the question whether such testimony might be received when for any reason the attendance of the witness could not be procured was neither determined nor discussed by this court.

The question is one upon which the decisions are in conflict. They are well collected and arranged in 14 Cent. Dig., col. 1933, § 1233, and col. 2272, § 1542. But the authorities are so nearly unanimous that they may be said to be in substantial agreement that the former testimony of a witness who has since died m'ay be used in further proceedings in the same criminal case, over the objection of defendant. (14 Cent. Dig., col. 1931, § 1232.)

In *The State v. Wilson*, 24 Kan. 189, 36 Am. Rep. 257, the rule was applied where the action in which the testimony was used was not technically the same as that in which it was taken, both, however, being prosecutions for the same criminal act. Some cases base this doctrine upon a construction given to the constitution as a matter of compelling necessity, to avoid a failure of justice (*Marler v. The State*, 67 Ala. 55, 42 Am. Rep. 95) ; or upon the ground that the constitutional provision in this regard is but declaratory of the common law, under which this practice was allowed. (*State v. McO'Blenis*, 24 Mo. 402, 69 Am. Dec. 435.) Others hold that the provision in question is met by the defendant being confronted by the witness who undertakes to state the testimony formerly given by the person since deceased, leaving to be determined only the competency of that kind of evidence. The great majority of courts that have permitted such evidence at all have done so either upon this ground, or upon the theory that, when the defendant has once met a witness face to face and had an opportunity to cross-examine him, the constitutional requirement has been satisfied, and no necessity exists, so far as the constitution is concerned, for again producing that witness

in court.   The following quotations illustrate these views :

"The requirement that the accused shall be confronted, on his trial, by the witnesses against him, has sole reference to the personal presence of the witnesses, and it in no wise affects the question of the competency of the testimony to which he may depose. When the accused has been allowed to confront, or meet face to face, all the witnesses called to testify against him on the trial, the constitutional requirement has been complied with.   This was done on the trial of the case before us, in the district court.  Mary Clinch was not a witness on that trial.   Being dead, it was an impossibility that she could be a witness on that trial.   Logan, however, who was a witness, and did testify, did meet the accused face to face on the trial.   The provision in the bill of rights was complied with.   And the true question is, not whether the constitutional right of the accused was violated, but whether the testimony given by Logan on the the trial was competent or not.".   (*Summons v. The State*, 5 Ohio St. 325, 341.)

"The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." (*Mattox v. United States*, 156 U. S. 237, 244, 15 Sup. Ct. 340, 39 L. Ed. 409.)

It is obvious that if either of these two propositions is sound, it applies with as much force when a witness is beyond the reach of process as when he is dead. In the elaborately considered case of *Cline v. The State*, 36 Tex. Cr. Rep: 320, 37 S. W. 722, 61 Am. St. Rep. 850, in which the authorities are reviewed at length, the court recognizes this fact and repudiates the entire doctrine, overruling many earlier Texas cases, and taking a position in opposition to the current of judicial decision.  Logically, there seems no middle

ground. Unless the requirement of the constitution is complied with, the death of a witness should not permit the use of his testimony. If it is complied with, the evidence should be admitted, unless open to some objection other than the constitutional one. Accordingly, as already stated, in a large number of cases it is held that the absence of the witness from the jurisdiction of the court, and the consequent impossibility of compelling his attendance, justifies the use of his former testimony. While there are also many decisions to the contrary, the recent tendency seems to favor the rule stated. This is illustrated by a comparison of a part of section 1195 of 1 Bishop's Criminal Procedure (3d ed.) with the corresponding matter in the same section in 1 Bishop's New Criminal Procedure, which, respectively, read as follows :

"If there has been a prior proceeding involving the same issue between the same parties, conducted regularly in pursuance of law, and therein the defendant had the opportunity to cross-examine the witnesses against him—not otherwise—then, if a witness has died, or, says Archbold, if he is insane, though the insanity were of a temporary nature, or if it appeared satisfactorily to the court that he was kept out of the way by means of the procurement of the defendant, or he were bedridden or so ill as to be unable to travel (but not if simply he cannot be found, or, by most opinions, if only he is absent from the state or otherwise beyond the reach of process), what he testified to at the former hearing may be shown in evidence against the defendant in the present one."

"If a witness has died, or has become insane, though but temporarily, or by the opposite party is kept out of the way, or is too ill or infirm to come to the court (for it cannot adjourn to his house) ; or if from any cause for which the party is not responsible, such as residence beyond the process of the court, or the like, the witness's personal presence cannot be had (a

rule as to which the decisions are somewhat indistinct and inharmonious), added to which, if there has been a prior proceeding involving the same issue between the same parties, conducted regularly in pursuance of law, and therein the defendant had the opportunity to cross-examine the witnesses against him—not otherwise—what was on such former hearing testified to by a witness whose presence cannot now be had, may be shown against the defendant.''

In *People v. Fish*, 125 N. Y. 136, 26 N. E. 319, the inquiry was as to the validity of a statute authorizing the use in a criminal case of the deposition of a witness who "is dead, or insane, or cannot, with due diligence, be found in the state.'' The court said :

"The evidence of the witness was taken in his (defendant's) presence where he had the opportunity to cross-examine him, and where he did in fact cross-examine him, and thus he had all the protection that the bill of rights and the constitution were intended to secure him. This constitutional provision was not intended to secure to the accused person the right to be confronted with the witnesses against him upon his final trial, but to protect him against *ex parte* affidavits and depositions taken in his absence, as was frequently the practice in England at an early day. It was never regarded as an invasion of the fundamental rights of an accused person to read depositions upon his trial, if at some stage of his case he could be confronted with and cross-examine the witnesses to be used against him.''

In *Commonwealth v. Cleary*, 148 Pa. St. 26, 39, 23 Atl. 1112, it was said :

"Where a witness has been examined in the presence of the accused, and the latter has had a full opportunity to cross-examine him, we think the additional requirement, that the defendant should meet his accuser face to face, is fully complied with. Where, upon a subsequent trial, the witness is dead, or beyond the jurisdiction of the court, there seems no good

reason why his testimony taken upon the former trial, and clearly proved, should not be admitted.''

And in *State v. King et al.*, 24 Utah, 482, 486, 68 Pac. 419, 91 Am. St. Rep. 808 :

''By taking the testimony of the witness Johnson in the presence of the accused upon the examination at a time when he had the privilege of cross-examination, this constitutional privilege is satisfied, provided the witness cannot, with due diligence, be found within the state.''

And again, quoting from 1 Greenleaf on Evidence, sixteenth edition, section 163*g*, page 284 :

''The death of the witness has always, and as of course, been considered as sufficient to allow the use of his former testimony. The absence of the witness from the jurisdiction, out of reach of the court's process, ought also to be sufficient, and is so treated by the great majority of courts. Mere absence, however, may not be sufficient, and it is usually said that a residence or an absence for a prolonged or uncertain time is necessary. A few courts do not recognize at all this cause for non-production ; a few others deny it for criminal cases. Neither position is sound. Inability to find the witness is an equally sufficient reason for non-production, by the better opinion, though there are contrary precedents. The sufficiency of the search is usually and properly left to the trial court's discretion.''

And in *Territory of Idaho v. Evans*, 2 Idaho, 627, 633, 23 Pac. 232, 7 L. R. A. 648 :

''While the decisions have not been uniform in their conclusions, the weight of authority is that depositions taken in the presence of the defendant, with the right of cross-examination, is being confronted by the witnesses, and meets the demands of the constitution. Such depositions have been admitted when it appeared the witness was dead. If constitutional in such case,

the same justification can be urged for their use in case of absence of the witness.'' ·

We think the only reasoning that justly sustains the use of the former testimony of a witness who has since died applies with equal force where the witness is out of the jurisdiction of the court and so cannot be produced, and conclude that there was no error in the ruling of the trial court in this regard. Apart from the constitutional question, the evidence was competent. (*Railroad Co. v. Osborn*, 64 Kan. 187, 67 Pac. 547, 91 Am. St. Rep. 189.)

Another phase of the same objection is presented in virtue of the fact that there is no showing in the record that the state had taken the precaution before the witness left the state to serve him with a subpœna or require him to give a recognizance to appear. To have done so would have placed him under an obligation to attend the subsequent trial, but could not have compelled such attendance. In *Motes v. United States*, 178 U. S. 458, 20 Sup. Ct. 993, 44 L. Ed. 1150, it was held that the absence of the witness being due to the negligence of the prosecution, his former testimony could not be used against the defendant. But there the witness in question was a codefendant held without bail, and it was within the absolute power of the government to secure his presence. He was taken from the jail in violation of law by the official agent of the United States and practically set at liberty. Moreover, his disappearance did not occur long enough prior to his being called as a witness to justify the conclusion that he had gone out of the state.

In any case where it appears that the absence of a witness is by the procurement of the prosecution, the trial court should, of course, protect the defendant and refuse to permit the use of the former testimony,

not because of the constitutional requirement referred to, but because the ordinary rules of evidence require the presence of the witness if it can be had, and a party procuring the absence of a witness could not derive an advantage from it. But the mere fact that the absent witness was not under subpœna does not raise a presumption of bad faith, or amount to such lack of diligence as of itself to forbid the use of his testimony given at a former trial.

A further claim of error is based upon the admission of the former testimony of another witness, said to have died before the second trial. It was urged that there was no sufficient proof of his death. Whether that is true or not, there was a sufficient showing that he had left the state to bring the case within the operation of the rule already discussed.

Error is assigned in the giving of an instruction that evidence of previous threats made by Morris against defendant might be considered for the purpose of throwing light on the question as to which was the aggressor, and as tending to show the animus of the deceased. This is conceded to be the rule of law in relation to uncommunicated threats; but it is insisted that the court, having entered upon the discussion of the effect of threats against defendant at all, should have instructed as to the consideration that should be given to threats that were communicated to defendant, since there was evidence that some of them were communicated. The argument is made that the jury would naturally infer that even the communicated threats should not be considered for any other purposes than those specifically named in the instruction. This is not sound. There is a great and obvious difference in the effect to be given to uncommunicated threats against the defendant and

threats that are communicated.  The essential thing in the one case is the fact that the victim of the homicide made the threat, and in the other that the defendant knew or believed that he had made it.   In the latter case it is really the communication and not the threat that is important.   The threat is relevant because it tends to show the feeling of the deceased toward defendant; the communication of the threat is relevant because it tends to show that the defendant knew of such feeling and was justified in acting with reference to it.   The two subjects are not so closely related that the court may not instruct as to the force of threats without also specifically referring to the communication of threats.   The defendant did not ask for an instruction as to communicated threats and therefore the omission to give one was not error.

Other assignments of error relate to the evidence and do not require special discussion.   It is claimed that the evidence did not justify the conviction because it showed that the defendant acted only in self-defense.   The homicide was the result of a street fight.   Morris was unarmed, except that he had a small penknife in his hand.   Nelson had a revolver, which he fired at Morris four or five times, one shot being almost immediately fatal.   Other facts appear in the statement in *The State v. Nelson*, 65 Kan. 689, 70 Pac. 632.   It is obvious that the guilt or innocence of the defendant was a fair matter for the determination of a jury.

The judgment is affirmed.

All the Justices concurring.