THE STATE OF KANSAS V. BURTON MCCLELLAN.

No. 16,026.    (98 Pac. 209.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Absence of a Witness—Testimony Given at a Former Trial.* Before the testimony of a witness given. at a former trial can be read in evidence by the state against a defendant in a criminal prosecution, over his objection, it must be made to appear that the witness who gave such testimony can not, by the exercise of reasonable diligence, be produced.

2. —— *Same.* In such a case the mere production of a subpœna which has been issued for the absent witness, with a return of *non est* thereon, without any further showing as to the residence or, whereabouts of such witness or of the extent of the search made for him, is insufficient, and the introduction of such evidence under such circumstances is error.

3. —— *Evidence of General Reputation.* In a criminal case the ·defendant, to establish his good character, produced a witness who, in chief, testified that he was acquainted with the defendant's general reputation for honesty and integrity in the community where the defendant resided, and that such reputation was good; that he had been acquainted with the defendant six or seven years, during which time the defendant had worked for the witness; and, on cross-examination, the witness stated that the only persons he had heard speak about the character of the defendant were members of his own family. He further said: "I don't know as I ever heard it questioned—that it ever came up any more than any other gentleman's." The court struck out the evidence of the witness on the ground that it did not tend to establish a general reputation. *Held*, error.

. Appeal from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed November 7, 1908. Reversed.

*Fred S. Jackson,* attorney-general, and *W. A. Ayres,* county attorney, for The State.

*S. B. Amidon, D. M. Dale,* and *J. A. Conly,* for appellant.

The opinion of the court was delivered by

GRAVES, J.: This action was appealed from the district court of Sedgwick county, where the defendant was convicted of robbery in the first degree.

On the trial the state was permitted to read in evidence the testimony of a witness given at the preliminary examination of the defendant for the charge upon which he was then being tried. As a foundation for the introduction of this evidence the county attorney produced a subpœna which had been issued for the witness and upon which was a return by the sheriff of *non est*. Upon this showing alone the evidence was read to the jury. It does not appear when the subpœna was delivered to the sheriff, or what search had been made to find the witness, or where he resided. The showing made was insufficient to establish that the witness was beyond the jurisdiction of the court at the time of the trial and could not, by the exercise of reasonable diligence, be produced as a witness. This was erroneous. The testimony given by a witness at a former trial may not be given in evidence as a mere matter of course. Some adequate justification therefor must exist. The admission of this class of evidence is permitted, not merely because it was taken by a court stenographer and may therefore be reproduced with accuracy, but only for the reason that the living witness can not, by the use of reasonable diligence, be produced. If the absent witness is dead, insane, beyond the jurisdiction of the court, or secreted by the adverse party, then the former testimony may be shown, even though it may be necessary to do so by the evidence of witnesses who heard the testimony given.

Other causes for the use of such evidence than those enumerated may, in some cases, be sufficient; but as a general rule it may be said that whenever it is reasonably possible to produce the living witness it should be done. The right of every litigant to meet the important

The State v. McClellan.

witnesses of his adversary face to face, whenever and wherever their evidence is likely to affect his material interests, is recognized by all practicing lawyers to be of inestimable value. This is especially true of defendants in criminal cases, and they should receive reasonable protection in this respect, even when, as in this case, their constitutional right to meet the witnesses against them face to face has been exercised by a cross-examination of the witness at his previous examination. The right to have all adverse witnesses testify personally exists independent of the constitution, and the spirit of common fairness which pervades all courts of justice is a sufficient guaranty that it will be recognized and enforced. In legal theory it may be presumed that witnesses will always tell the same story when under oath, but, in practice, we know they do not. Mental confusion, lapse of memory, and other circumstances existing when a witness testifies, may give color to his evidence which subsequent reflection will change materially. Because of this fact, familiar to all lawyers, parties often prefer to use the former testimony of a witness rather than take the hazard of a reëxamination. This should not be permitted when the witness can be produced. For a full discussion of this question, and an elaborate citation of authorities, see *Railroad Co. v. Osborn,* 64 Kan. 187, 67 Pac. 547; *The State v. Nelson,* 68 Kan. 566, 75 Pac. 505; *The State v. Harmon,* 70 Kan. 476, 78 Pac. 805.

The defendant further complains because the court excluded evidence offered by him in support of his good character. A witness was produced who testified upon his examination in chief that he resided in Wichita and had been acquainted with the defendant six or seven years; that he knew the defendant's general reputation in that community for honesty and integrity, and that it was good. On cross-examination he stated that the defendant had worked for him; that he had heard no one outside of his own family talk about it—had never

heard the matter discussed. He further stated: "I don't know as I ever heard it questioned—that it ever came up any more than any other gentleman's." The testimony of the witness was stricken out by the court, for the reason that the limited number of persons whom the witness had heard speak about the character of the defendant excluded the idea of general reputation. In our view this evidence was proper for the consideration of the jury, and should have been received. The defendant propounded to the witness the questions which, under the rules generally followed in the introduction of such testimony, were proper. He could not follow the matter further by showing the extent of the witness's acquaintance with people who knew the defendant and with whom he transacted business, and in that manner show that the relations of the witness with people of this class were such that if the character of the defendant had been criticized by any of them he would probably have heard it. The defendant's right to interrogate the witness was exhausted when these stereotyped questions had been asked and properly answered. He could go no further. The answers of the witness established his competence to testify upon that subject, and his evidence established the good character of the defendant, except as modified or destroyed in the estimation of the jury by the cross-examination.

In some courts it has been held that where the witness answers the usual questions in chief satisfactorily there is no preliminary question of competence for the court to decide, as in the case of experts, and the question of the weight of the evidence and the knowledge of the witness is a matter solely for the consideration of the jury. (10 Encyc. Pl. & Pr. 302; *Bates v. Barber,* 58 Mass. 107, 108.) This question does not arise here, however, and we express no opinion upon it. We only decide that negative evidence of good character, as indicated by the answers of the witness in question, is competent, and should be admitted. In volume 10 of

the Encyclopædia of Pleading and Practice, at page 332, it is said:

"The best characters being generally those which are least talked about, the testimony of one who is well acquainted with a witness, and with his neighbors, and who would be likely to hear what is said of him, that he has never heard his character called in question, is admissible to show that the general character of the witness is good."

In volume 2 of Wigmore on Evidence, section 1613, it is said:

"The reputation, as just indicated, must involve the general opinion, not a partial or fragmentary one. Nevertheless that opinion may exist as a general one, entertained by the community as a whole, although no utterance by that general mass of its members, or even by a majority of them, has been made. In other words, a general reputation may by inference be believed to exist, although the utterances actually heard by the witness, and used as the basis of his inference, may be and usually are those of a representative minority only."

Section 1614 of the same work reads:

"Upon the same principle, the absence of utterances unfavorable to a person is a sufficient basis for predicating that the general opinion of him is favorable. A witness to good reputation may therefore testify by saying that he has never heard anything said against the person."

At page 1961 of the same volume is a note giving a quotation from Mr. Chief Justice Cockburn, which reads:

"Negative evidence, such as 'I never heard anything against the character of the man,' is the most cogent evidence of a man's good character and reputation, because a man's character is not talked about till there is some fault to be found with it. It is the best evidence of his character that he is not talked about at all." (*R. v. Rowton,* L. & C's. Cr. Cas. [Eng.] 520, 536.)

Also, a quotation from the case of *Taylor and Taylor v. Smith,* 16 Ga. 7, which reads:

"Certainly the sort of silent respect and consideration with which one is treated and received by those who know him is some index of what they think of him as a man of veracity. And, indeed, if he is a person whom they think very highly of, this is about the only index. The character for truth, of such a person, is never discussed—questioned—'spoken of.' To discuss, question, or even, perhaps, to speak of one's reputation for truth, is to admit that two opinions are possible on the point." (Page 10.)

This rule for the establishment of general reputation was adopted by this court in the case of *The State v. Bryan,* 34 Kan. 63, 8 Pac. 260. The fact that the character of the reputation sought to be established in that case was different from that here involved does not affect the rule.

There are other questions presented, but we deem it unnecessary to consider them, as the conclusions already reached dispose of the case. The judgment of the district court is reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

JOHNSTON, C. J., MASON, SMITH, PORTER, BENSON, JJ., concurring.

BURCH, J. (concurring specially): I concur in the reversal of the judgment and in the statement of the law in the foregoing opinion, but I am not satisfied that the error in refusing the reputation evidence was material, and would not reverse the judgment on that ground.