The State v. Miller.

No. 23,458.

THE STATE OF KANSAS, *Appellee*, v. JOE MILLER, *Appellant*.

SYLLABUS BY THE COURT.

1. ROBBERY—*Evidence of Witness on Preliminary Examination—Properly Admitted*. The facts considered, relating to inability to procure attendance at the trial, of a witness who testified at the preliminary examination, and *held*, the testimony given by the witness at the preliminary examination was properly read in evidence.

2. SAME—*Impeachment of Absent Witness*. Absence of the witness did not change the rules relating to impeachment of witnesses, and *held*, certain evidence offered for the purpose of detracting from the credibility of the witness was properly rejected.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed November 4, 1922. Affirmed.

*Charles E. Thompson,* of Kansas City, and *Loyd Martz,* of Kansas City, Mo., for the appellant.

*Richard J. Hopkins,* attorney-general, *E. A. Enright,* county attorney, and *Justus N. Baird,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Joe Miller was convicted of robbery, and appeals.

A messenger, carrying a package of money from a bank to his employer's place of business, waited at a street corner for a street car. An automobile, carrying two men besides the driver, approached the place where the messenger was standing and stopped at the curb. The two men alighted, robbed the messenger, reëntered the automobile and were driven away. The driver of the automobile was Joe Miller. A bystander who saw what was taking place made quick effort to take the license number of the automobile, and was afterwards able to identify the car and the defendant. The only other person who was able to identify the defendant as driver of the automobile was Ruby Taylor, a waitress in a restaurant, who witnessed the robbery from a window of the restaurant. Ruby Taylor was not present at the trial, and her testimony given at the preliminary examination was read over objection of defendant. The objection was that proper diligence had not been used to secure attendance of the witness.

The preliminary examination was held in August, 1920. The trial began on January 2, 1921. Six weeks before the trial commenced the assistant prosecutor in charge of the case learned that the wait-

ress was no longer employed at the restaurant, learned she no longer lived at the address she gave at the preliminary examination, and was unable to find her. On January 3 he issued a subpœna for her, which came into the hands of the sheriff at 5:20 p. m., and the sheriff was unable to find her. On January 4 her testimony given at the preliminary examination was offered in evidence. In an investigation of the admissibility of the evidence it was disclosed that some months before the trial Ruby Taylor left the restaurant, telling the proprietor she was going home to Coffeyville, and that afterwards a dishwasher in the restaurant told the proprietor he had seen her in Coffeyville. There was some dispute concerning the information given out by the proprietor of the restaurant with respect to the whereabouts of Ruby Taylor. The court directed the sheriff to send telegrams to Coffeyville in an effort to locate her, and adjourned the trial. Telegrams were sent to the sheriff and the chief of police at Coffeyville. The sheriff did not reply and the chief of police answered he was not able to find her. When the trial was resumed the offered evidence was read to the jury.

We do not have here, as in the case of *The State v. McClellan,* 79 Kan. 11, 98 Pac. 209, the simple return of a subpœna, *non est,* as the basis for an offer of testimony previously given. To prevent a possible failure of justice the court undertook to deal with the situation, and by the best means at its command obtained fair information that attendance of the witness could not be procured. There is nothing to indicate that the witness ought to have been placed under bond to appear at the close of the preliminary examination, or that a subpœna for her ought to have been issued before the assistant prosecutor made his inquiries for her, preparatory to trial of the case. If the witness had then been available, neglect to issue a subpœna for her would not raise a presumption of bad faith or amount to such lack of diligence as of itself to forbid use of the testimony given at the preliminary examination. (*The State v. Nelson,* 68 Kan. 566, 574, 75 Pac. 505.)

There are many statements in the decisions, including those of this court, to the effect that when the whereabouts of a witness is unknown, diligent search must have been made for him before his testimony previously given may be used. It may be conceded that after the assistant prosecutor learned the witness no longer worked and resided at the accustomed places he should have tried to find her, and if she could not be found, should have prepared himself to show the fact as a foundation for using previous testimony. The

ultimate question, however, was not whether effort to locate the witness, made some time before the trial, had been unsuccessful, but whether presence of the witness in court at the time of the trial could be procured. In the case of *The State v. Stewart,* 85 Kan. 404, 116 Pac. 489, the court quoted, as stating the rule, section 1402 of volume 2 of Wigmore on Evidence, as follows:

"The principle upon which depositions and former testimony should be resorted to is the simple principle of necessity, *i. e.,* the absence of any other means of utilizing the witness' knowledge. If his testimony given anew in court cannot be had, it will be lost entirely for the purposes of doing justice if it is not received in the form in which it survives and can be had. The only inquiry, then, need be, Is his testimony in court unavailable?" (p. 413.)

In this instance, the court with wise discretion halted the trial and undertook to find out if testimony of the witness in court was available. The witness was sought at the place where the latest information regarding her indicated she might be. The telegram to the chief of police gave her name, indicated her sex, stated she formerly lived in Kansas City, and indicated the occupation in which she formerly engaged. The chief responded that he had made search for her and was unable to find her. Under these circumstances, the court is of the opinion the testimony of the witness previously given was competent.

At the preliminary examination Ruby Taylor was cross-examined fully respecting the certainty of her identification of the defendant and was examined generally respecting conversations she had had with others about that subject. At the trial the defendant undertook to impeach the witness by showing a particular statement which it was claimed she had made at a particular time to a particular person. The court refused to admit the impeaching evidence for the same reason it would not have been admitted at the preliminary examination. The particular statement had not been called to her attention. Ruby Taylor was a witness in a case tried in June, 1920. She declined to answer certain questions propounded to her, relating to her character, on the ground her answers might tend to incriminate her. The defendant asked permission to read to the jury the questions and the declinations to answer. The request was properly denied, although counsel for the defendant stated they had not discovered the impeaching evidence until they were preparing for the trial. The fact that the witness was not present at the trial did not change the rules relating to impeachment of witnesses.

The judgment of the district court is affirmed.