Jesse **HOWARD**, Petitioner,

v.

Maurice H. **SIGLER**, Warden of Nebraska Penal & Correctional Complex, Respondent.

Civ. No. 1584 L.

United States District Court, D. Nebraska.

Jan. 19, 1971.

Alan E. Peterson, Lincoln, Neb., for petitioner.

C. C. Sheldon, Asst. Atty. Gen., for respondent.

## MEMORANDUM OF DECISION

URBOM, District Judge.

A petition for a writ of habeas corpus has been filed by Jesse Howard, who in 1968 was found guilty by two separate juries of a 1967 robbery and now is imprisoned in the Nebraska Penal and Correctional Complex by reason of a sentence of the District Court for Box Butte County, Nebraska. An evidentiary hearing was held in this court and briefs have been submitted by counsel for both parties.

Jesse Howard was charged in 1968 in two counts with larceny from a motor vehicle and robbery. On February 7, 1968, a jury found him guilty on both counts. The trial court granted a new trial on unspecified grounds and at the second trial a jury on July 3, 1968, found the defendant guilty of robbery only.

Issues before this court relate to the propriety of permitting at the second trial, on the strength of an affidavit regarding the unavailability of a witness, the reading of testimony of that witness given at the first trial; the requiring of the defendant during his own cross-examination to put on an article of clothing and to say certain words for purposes of identification; and whether the

evidence against the defendant was of such weak and doubtful character as to make the second conviction a denial of due process of law.

## CONFRONTATION

The Sixth Amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

Essentially, this means that the state in a criminal trial must present its witnesses in person, so that the defendant may have the occasion for seeing, hearing and cross-examining them. See Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

The question is whether this constitutional right of confrontation was violated when a transcript of the testimony of Teresa Eagleman Stone given at the first trial was permitted to be read at the second trial in the absence of Teresa Eagleman Stone on the strength of an affidavit that she was confined within a hospital with contagious tuberculosis, which physical condition would be greatly impaired by travel to the place of trial.

The record is clear that Teresa Eagleman Stone testified personally at the first trial and that counsel for the defendant then had full opportunity to cross-examine her, but for whatever reason chose not to do so. Charges against the defendant were essentially the same at the second trial as at the first. Under those circumstances, there can no longer be question that the introduction of the prior testimony at the second trial was not a denial of the defendant's right of confrontation, if Teresa Eagleman Stone was actually unavailable for personal appearance at the second trial despite diligence by the state to have her there. Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). In the recent case of California

v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) the court said:

> "We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel—the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him."

Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) is not at odds with this. Although there the court held a violation of the Confrontation Clause was committed by introduction of testimony at a preliminary hearing at which the petitioner was not represented by counsel, the court noted:

> " * * * (T)he case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine."

None of these cases, however, reached the question of whether an affidavit properly can be used to show that the witness is unavailable. Does the failure on the part of the state to present actual witnesses at the trial to prove Teresa Eagleman Stone's unavailability deny the defendant's right to be confronted with the witnesses against him?

The full affidavit was as follows:

> "Dr. Loring Dales, M.D., being first duly sworn deposes and says that he is a Medical Officer employed by the Public Health Service Indian Hospital of Rapid City, South Dakota. That Teresa Eagleman Stone, an Indian female of the age of 40 years, was admitted to said hospital on the 30 day of April, 1968. That Teresa Eagleman Stone is still confined within said hospital with a condition of positive contagious Tuberculosis. That her physical condition would be greatly impaired by travel from Rapid City, South Dakota, to Alliance, Nebraska, now or in the near future. That the stage of her disease is such that she could infect those with whom she may come into contact.

> "And further affiant saith not."

Most cases which have dealt with the predicate or foundation for the admissibility of prior testimony of unavailable witnesses have been concerned with the *sufficiency* of the evidence, rather than the *form* of the evidence. Thus, the court in Holman v. Washington, 364 F. 2d 618 (C.A. 5th Cir. 1966), considered whether proof of unavailability was sufficient where the evidence was by testimony of a deputy sheriff that he had mailed a subpoena to the absent witness by regular mail at the address shown on the subpoena docket sheet (an out-of-state address) and testimony of the absent witness which he gave at the former trial to the effect that he lived in such other state. The court dealt with the matter in terms of sufficiency, saying:

> "We think the above evidence is most inadequate as proof of the whereabouts of witness Jones. The state has merely indicated a possibility that Mr. Jones is beyond the borders of Alabama, and such indication certainly falls short of the requirement of diligent search for the witness and proper proof of absence from the jurisdiction. * * *

> * * * * * *

> "The constitutional right of confrontation and cross-examination to the

extent guaranteed by the Sixth and Fourteenth Amendments cannot be side-stepped because it happens to be convenient for one of the parties. The importance of this right is emphatically demonstrated by the existence of the numerous safeguards designed for its protection. * * * It is only when *all* of these safeguards have been complied with, particularly with reference to the case before us, the requirement of proper proof that the witness is unavailable, that the admission of his prior testimony does no violence to protected constitutional rights."

The case of Dowdell v. United States, 221 U.S. 325, 329, 31 S.Ct. 590, 55 L.Ed. 753 (1911) is not particularly close. It held that statements of the trial judge as to what occurred at the trial, such as whether an arraignment had been held, could be accepted without the judge's meeting the defendant face to face in the making of those statements.

Some state courts have wrestled with the question of the type of evidence which must be presented to satisfy the Confrontation Clause of the federal or a state constitution in laying the predicate for prior testimony. In State v. Brown, 181 Kan. 375, 312 P.2d 832 (1957) the court held that mere statements of counsel were not sufficient to show the unavailability of a witness whose prior testimony was sought to be used, and in doing so indicated that only testimony of live witnesses would be acceptable, quoting from State v. McClellan, 79 Kan. 11, 98 P. 209 (1908), as follows:

"The right of every litigant to meet the important witnesses of his adversary face to face, whenever and wherever their evidence is likely to affect his material interests, is recognized by all practicing lawyers to be of inestimable value. This is especially true of defendants in criminal cases, and they should receive reasonable protection in this respect, even when, as in this case, their constitutional right to meet the witnesses against them face to face has been exercised by a cross-examination of the witness at his previous examination."

In People v. Plyer, 126 Cal. 379, 58 P. 904 (1899), testimony given at a prior trial was offered on the ground that the witness had since died. The sole showing of the fact of death was an affidavit, and the court said:

"The evidence introduced to show the death of the witness was as much a part of the trial as any other part of it, and the fact that the witness was dead could no more be shown by affidavit than the fact that dying declarations could be shown by affidavit to have made under the sense of impending death, or that the contents of a written document could be shown, supplemented by an affidavit to the effect that the document was lost. * * * We know of no case where it has ever been held that an affidavit may be introduced as evidence at the actual trial of a defendant. * * * Almost every state constitution in the Union has a provision declaring that a defendant is entitled to be confronted at his trial by the witnesses against him. While our constitution has no such provision, yet that declaration is found in the Penal Code of the state, and * * * the right thus given to a defendant by the statute is deemed a most substantial one."

The more recent California case of People v. Green, 215 Cal.App.2d 169, 30 Cal.Rptr. 83 (1963) rejected unsworn statements of the prosecutor and a telegram and a letter as being adequate evidence of unavailability, but the court did not speak of constitutional principles, and it may be that the decision was upon a hearsay issue. It must be carefully remembered that the issue before this court in the present case is not one of hearsay. If it were, the holding of the Supreme Court of Nebraska would be conclusive and this court would not intrude to any degree, for this court has no standing to review Nebraska's hearsay evidence rules. In Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (December 15, 1970) reaffirmation

was made of the following statement from California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970):

"While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence * * *."

It is only within the context of the Confrontation Clause, therefore, that the issue in this case is entitled to this court's consideration.

█ In the last analysis I am persuaded that Jesse Howard, the petitioner in the present case, was entitled to be confronted by Dr. Loring Dales and any other persons who were being relied upon to establish that Teresa Eagleman Stone was not able to come to the trial. Dr. Dales was one of the "witnesses against" the defendant within the meaning of the Sixth Amendment. Without Dr. Dales' testimony the previously given evidence of Teresa Eagleman Stone could not be used by the state. What she had to say was detrimental to Jesse Howard, the defendant. She, therefore, was "against" the defendant, and whatever made her testimony admissible was "against" the defendant. Accordingly, the defendant had a right to meet Dr. Dales face to face and to cross-examine him on the subject of Teresa Eagleman Stone's illness and absence.

Except for federal constitutional purposes, the Supreme Court of Nebraska may have been correct in distinguishing the issue of availability of the witness as being "collateral" and pointing out that it "did not relate to the general issue of the guilt or innocence of the defendant." For purposes of the Confrontation Clause, however, it seems to me that it must be said that any witness relied upon to build the foundation upon which is to rest the admissibility of testimony as to the guilt or innocence of the defendant is a witness who must confront the defendant. In the absence of that confrontation the admission of the evidence was in violation of the defendant's constitutional rights and, unless he was not prejudiced thereby, he is entitled to receive a new trial or release from custody.

There is no ground for holding that the reception of the affidavit into evidence was not prejudicial. There was no other competent evidence that gave more than a hint of Teresa Eagleman Stone's unavailability. Without the affidavit the state unquestionably failed to show the diligence on the part of the state which was necessary to avoid a denial of the defendant's rights of confrontation as to Teresa Eagleman Stone. The testimony of Teresa Eagleman Stone, while hazy in that it referred only to "Jessie", permitted an inference it referred to Jesse Howard. It fixed him at a critical location shortly after the robbery, in contradiction of the defendant's evidence. Such testimony was not harmless error.

An order will be entered directing the release of the petitioner unless the State of Nebraska affords to him a new trial within 90 days of the date of this order.

## SELF-INCRIMINATION

At the second trial the defendant took the stand on his own behalf. On direct examination he testified that a coat, the state's exhibit 3, was not his coat, that he had never seen it before, and that he did not have one like it. On cross-examination he was asked to put the coat on, and he did. On direct examination he denied that he had taken any property or money. On cross-examination he was asked to repeat certain words which other witnesses had testified were said by the robber on the night of the robbery. The petitioner now asserts that these incidents violated his Fifth Amendment rights to be free of self-incrimination.

There was no violation of the right against self-incrimination. By taking the witness stand, Jesse Howard waived his Fifth Amendment right and the prosecutor had a proper opportunity to probe relevant areas. Actually, the petitioner does not claim otherwise, except to suggest that the cross-examination was outside the scope of the direct examination and, therefore, was basically unfair. The fact is, however, that the cross-examination was not outside the scope of the direct examination. Having flatly denied on direct examination that the coat was his, he certainly could be asked on cross-examination to try it on for the purpose of testing the truth of his disclaimer of ownership. Howard having testified on direct examination that he took no part in the robbery, cross-examination on the subject of the sound of his voice when saying certain words was directly relative to the commission of the robbery and was not, therefore, outside the scope of the direct examination. Additionally, it is probably true that neither the trying on of the coat nor the saying of certain words would constitute self-incrimination in any event. In United States v. Wade, 388 U.S. 218, 222, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967) the court said:

> "We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber to provide a blood sample or Holt to wear the blouse, and, as in those instances, is not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. We held in *Schmerber, supra,* [Schmerber v. California, 384 U.S. 757], at 761 [86 S.Ct. 1826, 16 L.Ed. 2d 908], that the distinction to be drawn under the Fifth Amendment privilege against self-incrimination is one between an accused's 'communications' in whatever form, vocal or physical, and 'compulsion which makes a suspect or accused the source of "real or physical evidence,"' * * * We recognized that 'both federal and state courts have usually held that * * * [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' * * * None of these activities becomes testimonial within the scope of the privilege because required of the accused in a pretrial lineup."

Although the foregoing quotation has to do with a pretrial line-up, it is probably true that the same observations apply to a trial.

## DUE PROCESS

The petitioner claims that the evidence against him was so palpably weak that a conviction resulting from it necessarily was a denial of due process. I have read the entire testimony and I cannot agree. The evidence was not powerful; yet there was some rather compelling identification evidence and many circumstances pointing toward the petitioner as the guilty one.

An order consistent with this memorandum will be entered today.