THE STATE OF KANSAS, *Appellee*, v. MOLLIE STEWART, *Appellant.*

No. 17,238.

SYLLABUS BY THE COURT.

1. CHANGE OF VENUE—*Where Evidence of Prejudice is Conflicting Refusal Will Not be Reversed.* A ruling refusing to grant an application for a change of venue because of the prejudice of the citizens of the county will not be reversed where the decision is based on conflicting evidence as to the existence of such prejudice.

2. JURY—*Impartial Jury Guaranteed by Constitution.* The constitutional guaranty of an impartial jury and the statutory provision that a juror may be challenged who has formed or expressed an opinion on an issue or material fact to be tried are intended to secure for a defendant a jury free from bias, prejudice or interest, and the fact that a juror who has read a newspaper report of an offense may, in answer to questions, state that he has or has not an opinion is not necessarily conclusive as to his qualification.

3. —— *What Constitutes a Disqualification.* Whether what a juror calls an opinion disqualifies him is a question of fact to be determined from his appearance, manner, character of his answers, the form of questions to which his answers are given, and the source of his information, and from these, and perhaps other things, the court is to determine whether his opinion is fixed and positive or only a light impression, and if it appears that he is an unprejudiced man, whose opinion or impression is not fixed or positive, but is wholly contingent upon the truth or falsity of the report or rumor he has read or heard, he is not subject to challenge.

4. —— *Qualification of Juror—Question for the Court.* The finding of a trial court as to the qualification of a juror is re-

The State v. Stewart.

viewable like any other finding of fact based on evidence; and if, upon the evidence, the trial court decides that the juror is free from bias, prejudice or interest, and has no disqualifying opinion, its decision will not be disturbed on appeal unless disqualification appears as a matter of law or it is disclosed that there has been an abuse of the discretion with which the court is vested.

5. EVIDENCE—*Record of Conviction of Principal—Admissible on Trial of Accessory.* Upon a charge that the accused counseled, aided and abetted another in the commission of a crime, the record of the conviction of the principal is *prima facie* proof of the fact and is admissible in the trial of an accessory.

6. ——— *Testimony of Witness on Preliminary Examination Admissible on Trial.* The testimony of a witness, voluntarily given in the preliminary examination of the charge on which the accused is on trial, is admissible in evidence where the accused had full opportunity to cross-examine the witness and the direct testimony of the witness had become absolutely unavailable to a party by reason of such witness claiming the statutory privilege of withholding his direct testimony because of being the husband of the accused.

7. ——— *No Prejudicial Error.* The fact that the trial court permitted counsel for the state to ask the witness a number of questions which he declined to answer because of his privilege is not material error where the former testimony of the witness on the subjects of inquiry was already before the jury.

Appeal from Franklin district court. Opinion filed July 7, 1911. Affirmed.

*W. J. Costigan,* and *R. E. Melvin,* for the appellant.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* assistant attorney-general, *Charles D. Shukers,* special assistant attorney-general, *W. B. Pleasant,* county attorney, *Edward T. Riling,* and *Walter Pleasant,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In an information Mollie Stewart and Frank Schneck were charged with the murder of Jane Schneck. It was alleged that they conspired together and aided, assisted and abetted each other in

the perpetration of the crime. A joint preliminary examination was had in which considerable testimony was produced, but the defendants were accorded separate trials in the district court. Frank Schneck was tried and convicted of murder in the first degree, and a few days afterwards Mollie Stewart was placed on trial. She asked for a change of venue to another county on account of the prejudice of the people, and affidavits for and against the motion were presented, but it was denied. Much time was taken in impaneling a jury, many challenges for cause were made, and nineteen of those made by the defendant were overruled. She appears to have exhausted all the peremptory challenges which the law gave her, and, after a trial lasting twelve days, the jury returned a verdict finding her guilty of murder in the first degree. She appeals from the judgment of conviction but she has not preserved or presented the evidence on which the conviction rests. There is no complaint that the evidence does not support the verdict nor of the instructions of the court in submitting the case to the jury.

The first ruling assigned as error was the refusal to change the place of trial. There were a number of affidavits tending to show that great publicity had been given to the killing of Jane Schneck; that great prejudice existed in the county against appellant; and affiants expressed opinions to the effect that a fair trial could not be had before a jury obtained in that county. As many, or more, affidavits were filed in behalf of the state in which affiants, in substance, stated that no such prejudice existed and that there was no reason why a fair and impartial trial of appellant could not be had in the county. The court heard all this conflicting evidence and upon it decided that there was no ground or reason for changing the place of trial. Manifestly there was no error in this ruling. (*The State v. Tawney*, 83 Kan. 603.)

The principal complaint is that certain challenges

for cause of persons called as jurors were overruled. The consideration of this ground is embarrassed by the fact that all the evidence relating to the alleged disqualifications is not brought up. In the bill of exceptions the trial court states:

"The testimony copied into this bill of exceptions is a mere fragment of the testimony given by the witnesses thus quoted, and a mere fragment of the entire testimony, as the testimony was very voluminous, the trial lasting from June 29 to July 11; and upon the entire case the evidence of the defendant's guilt was so clear, convincing and satisfactory, that no jury acting honestly, fairly and impartially could well arrive at any other verdict than the one returned in this case."

From an examination of the evidence printed in the abstract and counter abstract it would seem that the material part of the testimony given by the proposed jurors as to their qualifications is before us—enough, at least, to warrant a review of the rulings of the court —and the case will be decided on that theory. In the course of their examination jurors stated that they had read accounts in the papers of the charged killing; had conversed with neighbors about it; heard statements made by others concerning the case; and, to suggestive questions, answered that they held opinions and beliefs which it would require evidence to remove. Several of them stated that they knew of the conviction of Frank Schneck and believed that he had a part in the killing of his wife. Eight of the twelve jurors, who tried the case, indicated by their answers that they had impressions or opinions as to some of the facts in the case, but upon further questioning it was developed that they did not know the Schnecks or the defendant, that they had gained their information from newspaper reports or neighborhood talk, the accuracy or truth of which they did not know, and that their minds were open to a consideration of the evidence upon which they could fairly and impartially try the case.

For instance, J. A. Rowland had read what an Ot-

tawa paper published concerning the case and had talked with some of his neighbors about it. He had been led to believe that Jane Schneck had been murdered—a belief which he would retain until it was overthrown by evidence. When asked if he had an opinion as to whether the defendant was connected with the killing he said he had "some opinion" and would retain it "until evidence to the contrary was produced"; but upon further inquiry said that he had no knowledge of the accuracy of the newspaper reports; that he did not know the defendant; had no prejudice against her; and that the opinion or impression obtained from the reports would yield to the testimony of the case without effort and that he would take the evidence as a basis of his verdict.

Another juror, Joseph Baker, who knew none of the parties concerned and whose only information of the alleged offense was obtained from reading a newspaper, stated that he had an opinion which he would carry into the trial and which it would take evidence to remove, and when asked if he could go into the trial presuming this woman as innocent as if he had never heard of the matter he said "No, sir," and when the question was put in another form he was led to say that she would have to prove that she was not guilty. However, he said that his impression was contingent upon the correctness of the newspaper reports; that he had no definite opinion; that the impression gained from the newspaper would not prevent him from following the evidence, and that he knew of no reason why the impressions so gained would cause him to do her an injustice.

E. E. Martin read about the killing and was in the court room a short time when Frank Schneck was on trial but did not get a connected story from the testimony, and stated that he obtained an impression from reading the newspapers but not a fixed opinion. He said, in answer to a question, that it would take strong

The State v. Stewart.

evidence to remove his opinion. In reply to a question by the court he said that what he had was an impression and one that did not touch the vital question of the guilt or innocence of the defendant.

R. C. Jones, in reply to a question by counsel for defendant as to the state of his mind, was procured to say that he had an opinion "to a certain extent"; that he would enter upon the trial with it and retain it until it was overthrown by evidence; but he stated that he lived eighteen miles away and did not know any of the parties involved and had no prejudice against the defendant; had no information except what had been printed in the newspapers and had no knowledge of the accuracy of the reports, and that his impression or opinion would readily yield to the evidence.

There were other jurors upon whose retention error is assigned, but these are a fair type of the others and the challenges of these are the only ones commented on in appellant's brief. The defendant is entitled to a jury composed of members who are honest, impartial and intelligent. The constitution guarantees "a speedy public trial by an impartial jury" (Bill of Rights, § 10), and the statute provides that a juror who has formed or expressed an opinion on the issue or any material fact to be tried shall be subject to challenge. (Crim. Code, § 205). The purpose of these provisions is to secure for the defendant a jury free from bias, prejudice or interest. It is not that every one who has heard or read of an alleged crime shall be barred from service as a juror. Nor is a person necessarily disqualified because he may have an opinion as to some of the facts involved in the case. The fact that a juror says that he has an opinion is not conclusive. (*The State v. Spaulding*, 24 Kan. 1; *The State v. Bussey*, 58 Kan. 679.) Nor is a man necessarily qualified who states that he is free from bias and could fairly try the case or that the opinion which he entertains is only a slight impression. (*Morton v. The State*, [Dass. ed.] 1 Kan.

438; see, also, *The State v. Miller,* 29 Kan. 43; *The State v. Snodgrass,* 52 Kan. 174; *The State v. Morrison,* 64 Kan. 669.)

In the case last cited an attempt was made to define a disqualifying opinion, where it was said:

"It is not, as has been determined, a light and transient impression obtained from vague rumors or the reading of brief and partial newspaper reports, which in the nature of things would not close the mind of an unprejudiced man against testimony. (*The State v. Medlicott,* 9 Kan. 279; *The State v. Treadwell,* 54 id. 511, 38 Pac. 813; *The State v. Thomas,* 58 id. 806, 51 Pac. 228; *The State v. Kornstett,* 62 id. 221, 61 Pac. 805.) On the other hand, a strong impression or opinion, of a fixed and abiding character, based on information derived from witnesses or from those acquainted with the facts and deemed reliable, will disqualify, although the juror himself may think and state that he can fairly try the case." (64 Kan. 678.)

It is impossible to give a definition that will fit all cases, and whether what is called an opinion will disqualify is a question of fact determinable from the manner, appearance and expressions of the proposed juror, the source of his information, the form of the questions to which his answers are given, and from these and other things the trial court is to determine whether his opinion is fixed and positive or whether he is an unprejudiced man whose impression or opinion is wholly contingent upon the truth or falsity of the information he has received and who is free to hear and impartially consider the evidence and to render a verdict without regard to any former impression or opinion which he may have had. If it is of the latter kind and the trial court decides that he is a competent juror there is no reason for interfering with the decision. The question of the qualification of a juror is a mixed one of law and fact, and the finding of a trial court on a *voir dire* examination is reviewable the same as any other finding of fact based on evidence. If there is no

substantial testimony to sustain the finding it will be set aside on appeal; but if the trial court, with its superior advantages in seeing the juror and noting his manner while testifying, observing his understanding of terms and his comprehension of the different forms of questions put to him, decides that the juror is free from bias, prejudice or interest, and has no disqualifying opinion, its decision will not be disturbed unless disqualification appears as a matter of law or it is disclosed that there has been an abuse of the discretion with which the court is vested in such cases.    (*The State v. Smith,* 74 Kan. 387.)

While some of the answers of the jurors indicated disqualification, it was due, in part, to the form of the questions, and a consideration of all of their testimony makes it fairly apparent that the jurors were without bias, prejudice, or disqualifying opinions.   To a number of questions the jurors said in reply that they had opinions, but it is manifest that color was given to the answers by the way in which the questions were framed.   In *Walker v. The State,* 102 Ind. 502, it was said:

"Persons called to serve as jurors are often confused by the incisive and inquisitorial nature of the questions addressed to them touching their qualifications to act in that capacity, and, under a confusion thus induced, frequently give inconsistent, and even incoherent, answers.   It is, consequently, both just and reasonable that the judge who presides at the trial should be permitted to exercise a large discretion in determining the weight and relative importance which should be given to such answers." (p. 505.)

The jurors chosen here were strangers to the defendant and to every one connected with the tragedy. They were candid in their answers, and a reading of their testimony indicates plainly enough that they were free from prejudice and that the newspaper accounts which they had read and the rumors which they had heard did not close their minds to a fair considera-

tion of the evidence or the giving of an intelligent, honest verdict. There was, at least, a good basis for the findings of the court, and it can not be said, as a matter of law, that the jurors retained held disqualifying opinions.

Error is assigned on admitting in evidence the record of the conviction of Frank Schneck. The defendant was prosecuted on the theory that Jane Schneck was murdered by Frank Schneck and that defendant counseled, aided and abetted him in the commission of the crime. The state, therefore, undertook to prove that Frank Schneck was guilty of the crime, and as he had already been convicted the record of the conviction was offered as proof of the fact. It has been determined that the record of the conviction of the principal is *prima facie* proof of the fact and is admissible in the trial of an accessory. There was no error in this ruling. (*The State v. Mosley*, 31 Kan. 355; *The State v. Bogue*, 52 Kan. 79.)

The next ruling of which complaint is made was the admission of the testimony of Ed Stewart given at the joint preliminary examination of Frank Schneck and the appellant. The appellant had the opportunity to test the evidence when given by a cross-examination under oath. It was taken in her presence in support of the charges upon which she was convicted and therefore does not infringe her constitutional right to be confronted with the witness. There was identity of parties and, substantially, an identity of issue. The evidence was given in a preliminary hearing instead of a former trial, it is true, but that fact does not make it inadmissible. Objection was made to receiving testimony taken earlier, at a preliminary hearing, in *The State v. Wilson*, 24 Kan. 189, and it was there said:

"The two essentials, the oath and the right to cross-examine, existed in this case. There was a judicial proceeding to which the defendant was a party. The testimony was given under oath. The defendant had a

right to be present, was in fact represented by counsel, and could have cross-examined fully and without limit or restraint. The act, the subject of inquiry, was the same; and while the charge is different, the difference results from matters occurring after the giving of the testimony, and in no manner changing the actual facts of inquiry. (p. 195.)

The same rule was applied in *The State v. Harmon,* 70 Kan. 476. It is contended, however, that as the witness was alive and in attendance upon the trial there was no occasion or reason for the admission of evidence given on either a former trial or a preliminary examination. Such testimony is admitted on the ground of necessity because it is impossible or impracticable to directly obtain the information from the witness who formerly gave the testimony. In section 1402 of volume 2 of Wigmore on Evidence, it is said:

. "The principle upon which depositions and former testimony should be resorted to is the simple principle of necessity, *i. e.,* the absence of any other means of utilizing the witness' knowledge. If his testimony given anew in court can not be had, it will be lost entirely for the purposes of doing justice if it is not received in the form in which it survives and can be had. The only inquiry, then, need be, Is his testimony in court unavailable?"

Absence of the witness from the jurisdiction of the court, thus making it impossible to secure his attendance by compulsory process, was held to authorize the introduction in evidence of his testimony given on a former trial of the same case in which the charge was murder. (*The State v. Nelson,* 68 Kan. 566; *The State v. Harmon,* supra.) This rule was applied in *The State v. Simmons,* 78 Kan. 852, where the witness had removed from the state, and in *The State v. McClellan,* 79 Kan. 11, it was recognized that such testimony is admissible, but it was there held that it should not be received unless it appears that the witness can not be produced or his evidence obtained by the exercise of rea-

sonable diligence, and that a showing that a subpœna has been issued upon which a return of *non est* has been made by the sheriff is not a good foundation for the introduction of the former evidence. The right to the use of such evidence was the subject of discussion and decision in *Railroad Co. v. Osborn,* 64 Kan. 187. The authorities, although not unanimous, generally hold that proof of such testimony may be received when the witness is dead or insane, or where there is a loss of memory resulting from illness or old age, or where he is feeble and physically unable to attend court, or where his whereabouts are unknown and can not be ascertained after diligent search, or where the adverse party has caused the witness to conceal or absent himself from the trial, or where he has become disqualified since the former trial by reason of interest, infamy, incapacity or the doing of some act whereby his testimony becomes unavailable to either party to the litigation. (2 Wig. Ev. §§ 1403, 1406; 1 Ell. Ev. §§ 499, 500; 1 Greenl. Ev., 16th ed., § 163*g*; 2 Jones Ev. §§ 339, 345; 16 Cyc. 1095, 1102; Bishop's New Crim. Proc. § 1195; Note, 61 Am. St. Rep. 886; Note, 91 Am. St. Rep. 193.)

In this instance the witness was living and was present at the trial, but he claimed his statutory privilege and declined to testify against his wife. (Crim. Code, § 215.) He was a competent witness and had a right to testify against her either with her consent or over her objection. (*The State v. Geer,* 48 Kan. 752.) He had voluntarily testified in the preliminary examination in her presence and where the accused was given full opportunity to cross-examine him and to test the accuracy and truth of his statements. That testimony had been reduced to writing, and thus preserved and perpetuated for future use. It was voluntarily given by a competent witness. It was legal evidence when given. It was a closed and completed thing, capable of reproduction, and was available in subse-

quent trials in cases where it was the best evidence obtainable. His refusal to testify *viva voce* at the trial made the information which he had formerly given as. inaccessible to plaintiff as if he had been dead or out of the jurisdiction of the court.

It is sometimes said that the testimony of a witness at a former trial can not be read if he is present at the trial, but its admissibility does not depend so much on the presence or availability of the witness as it does on the availability of the testimony; and the testimony of Stewart was just as unavailable as if he had walked over the state line where process could not be served upon him. It has been held that if a party to an action dies after a first trial, thereby rendering the other incompetent to testify, the testimony of the deceased at the first may be produced or proved at the second trial. (*Lee's Adm'r v. Hill,* 87 Va. 497.) In *Pratt v. Patterson,* 81 Pa. St. 114, a trial was had in which both parties testified, and the verdict returned was set aside. Afterwards the defendant died and his executors were substituted. In the next trial the plaintiff was incompetent as a witness, but it was ruled that the testimony given by him at the first trial could be proven and read in evidence. It was held by the supreme court of Louisiana that testimony taken and reduced to writing on a first trial is admissible in evidence when the witness has since become interested in and a party to the suit. (*Wafer v. Hemken,* [La. 1844] 9 Rob. 203.) Other cases of like import are: *Matter of Budlong,* 61 N. Y. Supr. Ct. 131; *Evans v. Reed,* 78 Pa. St. 415; *Wells v. Insurance Co.,* 187 Pa. St. 166; *Gold v. Eddy, Administrator,* 1 Mass. 1; *Smithpeters v. Griffin's Ad'r,* 49 Ky. 259.

If a witness can not prevent the use of his testimony by stepping outside the jurisdiction of the court, or the acquiring of an interest or other act which disqualifies him as a witness, it would appear that he can not defeat the use of testimony given when he was.

competent, and which. was reduced to writing, by claiming a statutory privilege and refusing to testify *viva voce* when called to the witness stand. It may also be said that he did not object to the introduction of his former testimony, although such an objection probably would have been ineffectual. It is admissible because it was competent and legal when taken and preserved and that, for some reason, the direct testimony of the witness can not now be procured. All the requirements of the law were satisfied when the testimony of Stewart was taken, and when he refused to testify his former competent testimony, which was in legal form, was as admissible as if he had been dead or beyond the reach of the court's process. Although not directly analogous, *The State v. Simmons,* 78 Kan. 852, affords an instance of the admissibility of former testimony when the witness was present in court and did not choose to testify. The defendant had voluntarily testified on the first trial, and when they proposed to read that evidence on the second trial it was objected that he was then in the court room and that the reading of his testimony would be equivalent to compelling him to testify against himself. The objection was overruled and his evidence, which had been transcribed, was identified and received in evidence. The ruling was placed on the ground that he had waived his privilege by giving his testimony in the first instance, but it demonstrates that the use of former evidence can not be defeated on the mere ground that the witness is in attendance at court, nor excluded by the fact that the witness chooses to avail himself of the privilege of withholding his direct testimony.

It is finally contended that the appellant was prejudiced by the rulings and statements of the court when Stewart was called as a witness. Stewart was sworn and answered a number of questions without objection, when counsel for appellant objected on the ground that the witness was the husband of the accused, and, after

The State v. Stewart.

an inquiry by the court whether counsel represented the witness, followed by a negative reply, counsel asked the court to instruct the witness as to his privilege and rights in the matter. The court suggested that the objection was one to be made by the witness and not by a volunteer, and stated that he would protect the witness in his rights when he asserted them. The witness stated that he did not wish to testify against his wife, but seemed to be quite willing to testify in her favor. It was not improper for counsel to suggest that the witness might not understand his privilege under the statute, nor to ask the court to advise him in respect to it. Any attorney in the court room, observing that witness was unaware .of the privilege and did not desire to testify, would have been justified in suggesting in a respectful manner that the witness be advised of his rights in the premises. It is evident, however, that the witness not only understood his rights but that he was alert and wise in discriminating between what would help and hurt his wife. When he objected to answering a question the court told him a number of times that he need not answer any question nor testify at all unless he desired to do so and did it voluntarily. A great many questions were asked to which the witness responded, "I refuse to answer;" and it is argued that prejudice resulted from this procedure. On the side of appellant it is urged that she had a right to object to the witness testifying and to make the objection for the witness, while it is contended by the state that it was the personal privilege of the witness, and if the objection was not made by him it could not be raised by the accused or her attorney. At the common law the general rule is that neither spouse is a competent witness for or against the other except in the prosecution of one for a criminal injury to the other. This rule has been variously modified by statutory enactments in many states, and in Kansas it is specifically provided that no person shall be incompetent to testify in criminal

27—85 KAN.

cases by reason of being the husband or wife of the accused (Crim. Code, § 215), and, as we have seen, the witness may testify, if he sees fit to do so, without the consent and against the objection of his spouse. (*The State v. Geer*, 48 Kan. 752.) Whether the privilege is wholly that of the witness, or whether the accused has a right to claim the privilege and to object to the testimony and to assign an adverse ruling as error, is a question upon which the court is divided in opinion, and, whatever may be the correct rule, it is not necessary to determine it in this case. The witness, as we have seen, had testified voluntarily and fully on the former examination. That testimony was rightfully received and covered the subjects inquired about at the trial. No prejudicial error could have resulted from asking the witness questions which he had already answered, which answers were already before the jury.

No material error being found in the record, the judgment of the district court is affirmed.