[Crim. No. 3548. First Dist., Div. One. Oct. 28, 1959.]

THE PEOPLE, Respondent, v. JOHN EMELIO DIAZ et al., Appellants.

*Assigned by Chairman of Judicial Council.

Richard D. Comerford, under appointment by the District Court of Appeal, and Elisbeth Lagomarsino for Appellants.

Stanley Mosk, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—The conviction of the defendants of violating section 11500 of the Health and Safety Code (sale of heroin) depends upon the testimony of state narcotics officer Mantler. He said he went out in a state auto with an informer who, at a certain point, left the car and then returned with the defendants whom the informer introduced to Mantler. From that point on Mantler dealt with the defendants and, according to his testimony, all in the presence of the informer.

At a certain point in Mantler's testimony, defense counsel requested the name of the informer and the court ruled the name would have to be disclosed. Thereupon witness Mantler testified ''his name is Robert Tomlinson,'' adding that he did not know how to spell it.

The court correctly so ruled. Informer Tomlinson was a material witness, the only witness (other than the accused)

who was in a position to amplify or contradict the prosecution's witness, Officer Mantler.[1] (*People* v. *Williams,* 51 Cal. 2d 355, 359-360 [333 P.2d 19]; *People* v. *Durazo,* 52 Cal.2d 354 [340 P.2d 594].)

On the morning of the next day of the trial, it developed during the cross-examination of Deputy Sheriff Best that he knew informer Tomlinson and knew how to spell his name. He had known Tomlinson for some time, about two years; i.e., a year prior to the events in litigation. He said Tomlinson was at the time in the pay of the sheriff's office and that he had picked Tomlinson up on that occasion as well as on previous occasions.

Defense counsel then asked Best, "You knew where the informer lives or lived at the time you picked him up?"

The prosecutor objected "to the residence of the informer. We have given a lot of information about the informer. Except for the fact that he participated in the sale we wouldn't have to name him. We do not willingly divulge details of all these persons for obvious reasons. I will object to going into the place where he lives as irrelevant and immaterial in this particular case."

In sustaining this objection the court said: "Yes. He [the informer] participated in the sale and, therefore, you [defense counsel] are entitled to know the name of the informer. You know the name of the informer and you incidentally know a great deal more about him than the name."

Defense counsel responded: "Your Honor, I don't want to contradict the Court, but the recent Supreme Court decision does not say merely the name, it says identity of the informer which would, of course, include the name. The name in itself is not a sufficient identity of anyone. There may be seven thousand Robert Tomlinsons as far as we know. Identity in my mind would mean his name, where he resides and so forth."[2]

The court replied: "I have already ruled."

It appears from statements of defense counsel to the court and to counsel for the prosecution (outside the presence of

---

[1]Another officer, Deputy Sheriff Best, was hiding in the trunk of the car throughout the conduct of this transaction but he heard none of the conversation in the car because of the noise the muffler made. He heard Mantler counting out the money when the car was stopped, and nothing else.

[2]Defendants invoke section 13 of article I of the Constitution of California and the Sixth and Fourteenth Amendments to the Constitution of the United States.

the jury) that with knowledge of the name furnished by Mantler they had obtained several addresses of Tomlinson from various county records and sought without success to serve him with subpoenas at those addresses. They had been unable to locate him. They did not know where he was at that time. During that discussion defense counsel asked the prosecutor: "Would it be possible that you could call Mr. Tomlinson as a witness to avoid all of this?" The prosecutor replied: "I am not going to." He owed the defendants no duty to do so, but his response underscores and emphasizes the fact that the reason for the refusal to give any more information concerning Tomlinson was the belief that defendants were entitled to the name only, not that the prosecution and the witness had divulged all their knowledge concerning the identity of Tomlinson.

The duty of the prosecution to disclose in such a situation as this is the duty to disclose the "identity" of the informer, not his mere name if that be insufficient to identify and enable the defense to locate him, limited of course to pertinent information in the possession of the prosecution or its witness. The very word "identity" runs like a common thread through all of the decisions on this subject.

Thus, in *People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19], upon facts very similar to those of our case, Chief Justice Gibson said that the privilege of the government to withhold the "identity" of informers "must give way when it comes into conflict with the fundamental principle that a person accused of crime is entitled to a full and fair opportunity to defend himself." (P. 357.) He further characterized it as the firmly established principle that the privilege of nondisclosure may not be invoked in a criminal case in which "the identity" of the informer "is material to the defense and nondisclosure would result in denying the defendant a fair trial." (P. 358.) Continuing in this vein, he gave illustrations of the application of this principle, the following among others: "Disclosure is required where the informer participated in the crime with which the defendant is charged. . . . However, the limitation is not confined to such cases, since it is based upon materiality of the informer's identity to the defense. Clearly, for example, an informer who took no part in the crime but was an eyewitness may be in a position to give highly significant testimony. . . ." (Pp. 358-359.)

In applying that principle to the facts of the Williams case (almost identical to those of our case), the Chief Justice said:

"In the light of the undisputed evidence in the present case, the informer was clearly a material witness on the issue of guilt with respect to the first sale. He not only saw the seller of the narcotics, whom he knew prior to that occasion, but also was instrumental in bringing about the transaction. As a witness at the trial he might have testified that defendant was not the seller of the narcotics, and such testimony would have been especially important to the defense in view of the fact that the officer was the sole witness for the prosecution and that, so far as appears from the record, he saw the culprit for only a few minutes, three months prior to defendant's indictment and arrest. Under the circumstances, disclosure of the identity of the informer was necessary to a fair trial of count one." (Pp. 359-360.)

 Those words apply with equal force here. Under the circumstances of our case as well as under the circumstances of the Williams case, "disclosure of the identity" of the informer "was necessary to a fair trial," and, under the circumstances of our case, the mere disclosure of his name and the refusal to furnish further identifying information resulted in a miscarriage of justice. The judgment must be reversed as to both defendants.

The State, in support of the refusal to give more than the bare name of the informer, says that the district attorney was under no duty to "produce" the informer. That is beside the point. No one is claiming the existence of any such duty under the circumstances of this case. Incidentally, in each of the two cases cited by the State under this head, the prosecution did not stop at furnishing the name only. It gave all the identifying information it had. (*People* v. *Scott*, 170 Cal.App.2d 446, 453-455 [339 P.2d 162], information that informer Burris,had been given a six months' jail sentence three months before and was released from jail one month before the Scott trial; *People* v. *Alexander*, 168 Cal.App.2d 753, 754-755 [336 P.2d 565], the description included name, color, age, height, weight and last known address.)

The State also says that here the informer functioned "as a contact only." That also, whether accurate or not, is beside the point. This informer was an eyewitness, hence a material witness, to the transaction narrated by Mantler.

The State asserts that defendants "already had a historical background on the informer including his several addresses." As we read the record upon this appeal, defense counsel obtained that "background" and those "addresses" from county

records after eliciting the name "Robert Tomlinson" from the witness Mantler and found those addresses erroneous or outdated, by subpoenas returned unserved, before seeking more identifying data from the witness Best. In short, the addresses which defendants were able to obtain by use of the Tomlinson name only, proved illusory. Moreover, a defendant in such a situation as this is not required to make a showing that he does not know the identity of the confidential agent. (*DeLosa* v. *Superior Court*, 166 Cal.App.2d 1, 2 [332 P.2d 390].)

The State says there is "no evidence that the district attorney knew more than" what defense counsel gleaned from county records after obtaining the name of the informer. The district attorney's representative did not so indicate, nor did he couch his objection in any such terms. Nor is there any indication that the witness Best had told all he knew pertaining to the identity of the informer.

Finally, the State contends that defendants waived their right to the needed information by failing to strike Mantler's testimony and by failing to object to the introduction of the narcotics in evidence. In response, it may be observed that the legality or illegality of the search and seizure of evidence is not here involved. Nor was any objection or motion to strike necessary to give the prosecution an opportunity to elect whether to withhold the informant's identity or not. It elected to give the information and did give the name of the informer. It was later discovered that the mere name was not enough. The refusal to give further information was, itself, under the circumstances of this case, a denial of defendants' rights under the state and federal Constitutions. What more should they do? Besides, it seems clear, from the record before us, that any further objection or motion they might have made on this subject would have been denied.

In view of the conclusion indicated, we find it unnecessary to consider other points discussed by the parties.

The judgments and orders are reversed as to both defendants.

Bray, P. J., and Tobriner, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 23, 1959.