**STATE of Missouri, Respondent,**

**v.**

**Walter BLEVINS, Appellant.**

**No. 52557.**

Supreme Court of Missouri, Division No. 2.

Dec. 11, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, David L. Pentland, Sp. Asst. Atty. Gen., Clayton, for respondent.

Alan B. Weber, and Richard L. Hughes, St. Louis, for appellant.

EAGER, Judge.

Defendant was convicted by a jury of first degree robbery by means of a danger-ous and deadly weapon; the jury assessed his punishment at eight years in the penitentiary. The motion for a new trial, filed within the time allowed, does not sufficiently raise either of the points presented on this appeal. Defendant relies upon the doctrine of "plain error," as stated in our Rule 27.20(c). Defendant was charged by information jointly with one Eddie Brown, but a severance was granted; he was represented at the trial by privately employed counsel but upon this appeal by two appointed counsel whom we commend for the diligence and skill employed in defendant's cause.

On Saturday, Dec. 4, 1965, Ray Moore, almost 17, Allen Jones, 17, and Deborah Jones (Allen's sister), 15, had been together for a short time at Moore's residence in an apartment building at 2310 Cass Avenue in St. Louis. This was apparently part of a housing project and other high apartments were in the neighborhood. All three of these persons were students. Moore and Jones were both wearing black leather jackets. The three left the building at around 6:30 to 7:00 p. m., intending to take a bus from the bus stop immediately in front of their building, but decided to go across the street to a grocery store to buy candy; in so doing, one or more of them noticed two boys or young men looking in the grocery store window. The three then re-crossed the street to the bus stop, where they stood practically under a streetlight. Almost immediately, the two boys who had been seen at the window ran across the street, holding pistols, and confronted the three; one of them faced Jones and his sister (who were looking toward the street), and the other faced Moore, who was looking toward the building. The youth facing Jones, later identified as this defendant, said, "Get out of those coats," and proceeded to take Jones' coat; when Moore hesitated, that same boy said, "We're going to have to shoot this ———. He don't want to come out of that coat,"—using a vile epithet. Moore did take his coat off (or it was taken

off) and the youth identified later as Eddie Brown took it. The robbers then ran a short distance toward a part of the housing project, stopped, and made some remark about "fighting"; they then said or asked, —"You don't like it," trotted a little further, stopped, and fired several shots toward the victims, whereupon they disappeared into the housing project. Deborah went back to the grocery store as soon as she could and reported the incident to the police; when the police arrived they wrote a report. Later each of the group of three was called to the police station to see if he or she could identify two prisoners being held.

Since the first and principal point consists of an attack upon the police station identifications of defendant and the attendant circumstances, it will be necessary to go into some detail. Defendant was not placed in a "line-up," and there is some disparity in the evidence as to whether he was shown alone or with Eddie Brown; it is probable that he was shown alone to one or more, and with Brown to one or more. Counsel argue that there was suggestiveness in the statements of the police in arranging for and in conducting the viewing. At one place the following occurred in Moore's cross-examination: "* * * they just merely brought him to you and said, 'This is the man,' didn't they? A. That's right. Q. And told you, 'This is the man,' is that right? A. No. They asked me was that him. Q. What did they tell you? Did they say, 'We got the man,' or what? A. No. Q. Did they tell you, 'We got the man. Will you come down and identify him?' A. Yes, that's what they told me." From the testimony of Jones, we quote: "And they asked you to identify him right there; is that correct? A. Didn't ask me to identify him. Q. What did they ask you? A. What did they ask me? Q. Yes. A. I don't remember what they asked me. I identified him as being one of the persons who robbed me, without asking anything. * * * You say they didn't ask you to identify—A. They asked me was he one of the ones. Q. I see. In other words, they asked you to identify him as the one of the ones? A. They didn't ask me to identify him. They asked was he one of the ones." From the cross-examination of Deborah we quote: "Q. Miss Jones, when you reported to the police station did they have Walter Blevins there? A. At one time, yes. We went down there twice. * * * Q. Did they just tell you, 'This is Walter Blevins'? A. No. Q. What did they tell you? A. Brought him forward and asked was that the person that, to identify, I mean, this is the person that robbed you, and I said, 'Yes.'"

Concerning the identifications of defendant at the police station, we note the following: Moore had not directly faced defendant during the robbery, and at the trial he admitted, both on direct and cross-examination, that there was some doubt in his mind at the police station confrontation, although he identified defendant in the early part of his testimony at the trial. The defendant was given the benefit of this doubt, candidly expressed, before the jury. Moreover, at the conclusion of his principal cross-examination Moore admitted that then, i. e., at the time of trial, he was "doubtful" about Blevins but not about Brown. Jones testified that at the station he looked at defendant "to make sure" and said, "That's him"; continuing, he testified: "I didn't say 'might be.' I was positive." Defendant had stood right in front of Jones and his sister during the robbery, at a distance of perhaps one and one-half feet. Deborah testified: that there was no doubt whatsoever in her mind about the identification of defendant at the police station, and that there was none at the time of trial; that she was "absolutely positive" of his identification.

The defense was that of alibi. Defendant, corroborated by one of his supposed companions, testified: that he and three others had attended basketball games on the afternoon in question and had, about

6:00 p. m., taken three girls (whose names he did not know) to a drive-in and then to the neighborhood of their homes; that they then started toward defendant's home after 7:00 o'clock, and passed the locale of this robbery, where they saw a crowd and learned that there had been a robbery. Defendant denied participation in the robbery and also denied his presence there at the time. He admitted that he had previously known Eddie Brown casually; he further testified that the "police" told him that Brown had committed the robbery and that the description of the other person was "short and stocky and light complected." In rebuttal, the two police witnesses of the State testified that defendant, after his arrest, never told them of attending the basketball games or of the trip in the car with others. Neither of these witnesses had gone to the scene of the robbery, or had written the original report. Eddie Brown, brought back from the penitentiary, testified: that he committed the robbery and was tried and convicted for it; further, that Blevins did not participate in it. He admitted a prior conviction.

Defendant was allowed an appeal as a poor person with a free transcript. His appointed counsel raise here, only as "plain error," two points: (1) that defendant's rights under the Fifth and Fourteenth Amendments of the United States Constitution (and equivalent provisions of the Missouri Constitution) were violated by the admission of the "identification evidence" offered and received; (2) that it was error to refuse defendant's motion to require the production and allow inspection of the police report.

■ (1). Counsel first rely upon the absence of counsel for defendant at the time of the preliminary identifications, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, June 12, 1967. The point is denied without discussion for the simple reason that in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, it was specifically held that the ruling in Wade was not retroactive. Blevins was tried and convicted in July 1966.

Next, counsel seek to establish that the pre-trial identifications were constitutionally unfair and that evidence thereof was improper, because defendant was not placed in a lineup, and because suggestive remarks were made by the police to indicate his guilt. Counsel again cite Wade but, as we read the opinions, neither of those issues was directly involved there. The issue actually decided was the absence of counsel at the unannounced lineup, and the failure to notify previously appointed counsel of such proceedings. In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199, a defendant was brought by several officers and two Assistant District Attorneys to a hospital, in handcuffs, where he was shown to one of two stabbing victims (the other having died). The surviving victim, a woman, had just undergone a very serious operation, performed to save her life. The victim was asked whether "he was the man," and she identified him. All this was shown in evidence at the trial and the victim, having survived, again identified the defendant; he was found guilty and sentenced to death. The Court first held that the decisions in Wade and in Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, were not retroactive. It further held that, although a pre-trial identification is a "critical stage," there was no violation of due process under the circumstances related, because the stated manner of exhibiting the defendant was there "imperative," since the victim could not go elsewhere. The Court held further that the showing singly of a defendant had been "widely condemned," but that the constitutional validity or invalidity of such proceedings depends upon "the totality of the circumstances." An examination of the five opinions leaves one in doubt as to whether or not a majority concurred in the holdings as stated above; we shall assume that it did.

In Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, the Court held that pre-trial identifications, without the presence of counsel who had previously been appointed, were constitutionally invalid; a judgment of conviction (*with a death sentence*) was vacated and the cause remanded for a determination of the effect of the supposedly "tainted" identification. Again, the divergent opinions leave the reader in some confusion, but the case is not controlling here, it having been held in Stovall to be nonretroactive.

■ If the point is to be considered, we must seek to ascertain the "totality of circumstances." We first note that this point is presented as supposed "plain error"; under that rule an allegation of error *may* be considered if it affects substantial rights, "when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." Rule 27.20(c). At no point in the trial or in the motion for new trial was the trial court given any opportunity to rule upon the question. The contentions are, in substance, that all evidence of pre-trial identifications and perhaps the trial identifications (the brief is not clear on that), should have been excluded because, (a) defendant was not exhibited in a lineup, and (b) that suggestive statements were made by the police to the identifying witnesses, all of which allegedly prejudiced defendant. The absence of a lineup is only one factor in the totality of circumstances. The so-called suggestive statements of the police have been quoted above. That contention arises principally from: an affirmative answer of Moore to a highly leading question by defendant's counsel (If the police did not merely say "This is the man") followed promptly by what seems to be a retraction, consisting of an answer to the effect that the police "*asked*" if that was the man; as to Jones, "They asked me was he one of the ones." Deborah's testimony was slightly vague, but it fairly shows that she was asked whether the person was one of the robbers.

At one point Moore answered in the affirmative the question,—"Did they tell you, 'we got the man. Will you come down and identify him?'"

We note that substantially all of the supposed suggestive remarks were made to Moore. Moore testified that at the robbery he did not directly face Blevins, and that at the pre-trial confrontation he was in doubt about the identification; and his principal cross-examination concluded with his statement that he was *still "doubtful."* Under these circumstances, it is almost inconceivable that anything said by the police influenced him or the jury, or in any way prejudiced the defendant. The other two, Jones and his sister, received no suggestions of consequence, and they were both most positive in their identifications of the defendant at all times. Under these circumstances, the "totality of the circumstances" certainly does not indicate that the trial was rendered unfair; and the facts do not show any such "manifest injustice or miscarriage of justice" as would authorize us to declare error under the doctrine of plain error.

■ (2) Counsel also allege, as "plain error," the refusal of the Court to order the production of the police report. At the close of all the State's testimony defendant's counsel moved orally for the issuance of a subpoena duces tecum for that report. This was said to be based upon a *feeling* that there would be "conflicting statements about the identity" of the defendant, and counsel stated that the report was desired for impeachment. The police witnesses of the State had concluded their testimony and had been excused. Jones had testified that he gave a general description of the second robber (considering Brown as the first) to the police, reciting some details in his testimony. It was not shown that Moore or Deborah gave any description. Defendant, in his testimony, stated (in answer to a most leading question on direct examination) that the "police" (not further specified) told him that the other

person was "short and stocky and light complected" (which would differ from the description testified to by Jones). The record does not demonstrate any sufficient reason for the production of the report; the motion was one in the nature of a "fishing expedition." The officers who took the original description and wrote the report of the robbery did not testify. Neither the source nor the basis of the supposed statement to defendant was shown. The police report was not used in any way at the trial by any witness. Under these circumstances, there was certainly no "plain error" in the denial of the motion. The point is without merit. See, generally, State v. Crayton, Mo., 354 S.W.2d 834; State v. Mobley, Mo., 369 S.W.2d 576; State v. Aubuchon, Mo., 381 S.W.2d 807; State v. Cochran, Mo., 366 S.W.2d 360.

The judgment is affirmed.

All the Judges concur.