**STATE of Missouri, Respondent,**

v.

**Russell James YATES, Appellant.**

**No. 53641.**

Supreme Court of Missouri,
Division No. 1.

June 9, 1969.

Johns C. Danforth, Atty. Gen., Jefferson City, James W. Herron, Sp. Asst. Atty. Gen., St. Louis, for respondent.

William E. Brand, Jr., James W. Durham, St. Louis, for appellant.

HOUSER, Commissioner.

Russell James Yates, convicted by a jury of illegal sale of a stimulant drug and sentenced to 8 years' imprisonment, has appealed.

■ Defendant, an indigent, was arrested on December 9, 1966. An attorney was appointed for him on January 16, 1967. Appellant scores this 38-day delay as unreasonable, claiming irreparable harm because during the interim material evidence was lost; evidence which he regards as indispensable to the proper preparation of his defense. The evidence in question is 70 feet of movie film out of 100 feet of film shot by a TV newsreel cameraman who on the evening of December 9, 1966 monitored a police broadcast, heard and responded to a call to 5091 Delmar Boulevard, saw officers in front of the building, got out of his car with his camera, followed the officers into the building with his camera running, and entered a room where he saw three people, their hands up in the air, being searched by officers. An officer "recovering some vials" from a toilet was photographed. All of the films taken were spontaneous and not posed. The film was processed and 30 feet of it was cut out, spliced and shown on television that evening. The remaining 70 feet was thrown into a cut-out basket at the TV station, where film is ordinarily kept from a week to a month and then thrown out. It may be inferred that the 70 feet was never shown to or in the possession of the police, eventually was discarded and is now irretrievable.

The difficulty with appellant's contention is that there is no showing that the film if saved would have demonstrated his innocence, depicted any fact favorable to his defense, impeached any state witness on any material fact, or revealed any fact not testified to orally. The film was not taken at the time of the commission of the crime, but afterward during the officers' raid and the arrests of defendant, Williams and Montgomery. The film would have shown

those three persons and any others present, including the officers, and their physical movements and actions at the time of arrest, but these facts were narrated in detail by several witnesses. So far as may be determined the missing film would have depicted nothing but cumulative facts.

■ Appellant, referring to the movie film, further contends that the circuit attorney's office and the police officers "acted to suppress evidence favorable to defendant." As indicated, appellant has not demonstrated that the missing film would have been favorable to his defense, or how or in what manner it could have assisted appellant in establishing his innocence.

■ Appellant contends that because of the difficulties he encountered in the "maneuverings" of the police officer during the time appellant was trying to obtain from him the physical control and possession of the film, and to locate and interview the cameraman, appellant was obliged to apply for several continuances and therefore was denied a speedy trial. Appellant says that the activity of the police and circuit attorney's assistants was unlawful and deprived him of due process of law. On the question of speedy trial: The indictment in this case was filed March 21, 1967. The trial began on September 25, 1967. During the interim 6-month period appellant filed numerous motions for continuance, to suppress evidence, to inspect and make copies of various documents and film, to compel disclosure of the name of an informer, to dismiss, and to produce evidence favorable to defendant. The disposition of these motions was necessarily time-consuming. The State asked for no continuances and filed only one motion (to quash a subpoena duces tecum). There is nothing to indicate unreasonable delay in the prosecution or any disposition on the part of the state to prolong defendant's incarceration or to harass him. (See State v. Hicks, 353 Mo. 950, 185 S.W.2d 650). The delays were occasioned and requested by appellant and under the facts there was

no denial of his constitutional right to a speedy trial. State v. Holmes, Mo.Sup., 389 S.W.2d 30, reaffirmed 428 S.W.2d 571.

■ The next question is whether the case must be remanded for error of the court in refusing to compel disclosure of the name of the informer. On the evening of December 8, 1966 (the night before appellant was arrested) a negro male informer whose identity was not revealed accompanied Officer Bardley to the premises at 5091 Delmar, intent on purchasing drugs from appellant. The officer was dressed in civilian clothes. In answer to the officer's knock the door was opened by a negro woman named Frankie Williams. The officer asked her if Russell Yates was there and she said "no." The officer then asked to buy a "trey bag" (a $3 packet of drugs). She went into the apartment, returned in a few moments with a small aluminum packet and gave it to the officer in exchange for three one dollar bills. The packet contained a powder known as Dextro Amphetamine Hydrochloride. The next evening, December 9, the two men returned to that address, knocked, Frankie Williams answered the door, and the two men told her that they wanted to see Russell Yates. She opened the door, walked into a room where two negro males were standing by a table. Bardley followed her and the informer followed Bardley. Bardley, who had seen photographs of Russell Yates, recognized him. Bardley walked over to a table on which there were aluminum foil packages, syringes and vials. The other man in the room was Lloyd Montgomery. Russell Yates asked Bardley what he wanted. Bardley said "Give me a trey bag." Yates reached to the table, picked up an aluminum foil package and handed it to Bardley, who gave Yates three $1 bills. Bardley turned and went out first. The informer, who had not spoken, left after Bardley left, walking behind Bardley. The packet contained a powder known as Dextro Amphetamine Hydrochloride. Bardley reported his purchase to other officers, who returned to 5091 Del-

mar and arrested Yates, Montgomery and Williams. When the officers knocked on the door Frankie Williams opened the door. When the officers announced their identity and undertook to arrest her she slammed the door in their faces and ran. The officers pursued her into the apartment. Yates threw two vials into a toilet and was attempting to flush the toilet when intercepted by an officer. The vials contained the drug in question. The three $1 bills handed to appellant by Bardley were found on appellant's person. After his indictment appellant through his counsel demanded of the police department and circuit attorney's office that they furnish him with the name, identity and whereabouts of the informer. They refused. Appellant filed a motion for a court order requiring the disclosure of this information on the ground that the informer was an eyewitness to the alleged sale and "an indispensable witness to the defense," and that the refusal to disclose the informer's identity deprived appellant of his "constitutionally protected right to a fair and speedy trial and the right to confront the witnesses against him." The court overruled the motion.

As a general rule communications made by informers to governmental officials are privileged. The privilege is founded upon public policy—the public interest in effective law enforcement. By preserving their anonymity citizens are encouraged to communicate to law enforcement officers their knowledge of the commission of crimes. The privilege is designed not for the protection of the informer but for the protection of the public interest. State v. Edwards, Mo.Sup., 317 S.W.2d 441, l.c. 446, 450, and authorities there cited. There are exceptions to the rule and the court may compel disclosure "if it appears necessary in order to avoid the risk of false testimony or in order to secure useful testimony," Wigmore on Evidence, (McNaughton rev. 1961), Vol. VIII, § 2374; where the disclosure of the informer's identity or the contents of the communication "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; or if the disclosure of the informer's identity "is necessary to show the innocence of one accused of a crime." Anno.—Disclosure of Identity of Informer, 83 L.Ed. 157. Whether the defendant can have a fair trial without requiring disclosure is a matter resting within the discretion of the trial court. State v. Redding, Mo.Sup., 357 S.W.2d 103 [7]. In balancing the interest of the individual in the proper preparation of his defense against the interest of the public in promoting the flow of information so as to protect society against the criminal element each case must stand on its own bottom, and under the facts of the particular case consideration must be given to "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro v. United States, supra; State v. Edwards, supra.

 Under these tests and rules the trial court may not be convicted of an abuse of discretion in upholding nondisclosure. The informer told the officers who was selling the drug and where purchases could be made. Although this informer was something more than a mere "tipster," in that he accompanied the officer to the premises, entered with him and witnessed the sale of the drug, there is no evidence that the informer introduced the police officer to the defendant, or ingratiated himself and the officer to defendant, or so conducted himself as to secure defendant's confidence, as in Gilmore v. United States, 5 Cir., 1958, 256 F.2d 565; nor did the informer himself make the purchase, as in Roviaro v. United States, supra, nor was the informer an active participant in the crime, Miller v. United States, 5 Cir., 1959, 273 F.2d 279, 281 [2]; United States v. Conforti, 7 Cir., 1952, 200 F.2d 365; Sorrentino v. United States, 9 Cir., 1947, 163 F.2d 627, nor was the informer the only witness to the transaction other than the

officer and the accused, as in People v. Diaz, 174 Cal.App.2d 799, 345 P.2d 370. Under the evidence the informer was merely a bystander who, although a witness to the transaction, did nothing to promote, participate in or encourage the commission of the crime. He was one of *three* nonparticipating witnesses. The mere physical presence of the informer at the scene of the crime is not sufficient to conclusively establish that a defendant cannot have a fair trial without disclosure of the identity of the informer. Miller v. United States, supra, 273 F.2d, l.c. 281. If appellant is innocent and the state's case against him is a complete fabrication, as claimed, he was not entirely dependent upon the testimony of the informer to establish his nonparticipation. Two of his associates, Frankie Williams and Lloyd Montgomery, were present and were in a position to observe and testify to what transpired at the time the sale was allegedly made. Frankie Williams, placed on the stand by appellant, refused to testify on the ground of self-incrimination but appellant was not thereby left dependent solely upon the testimony of the informer. There was another independent witness, Lloyd Montgomery. Appellant, however, did not produce Montgomery or his deposition or show that his testimony was not available. While we cannot say what the testimony of the informer might have been it is reasonable to conclude (in view of the accuracy of the information he gave the officers, as confirmed by subsequent events) that defendant's knowledge of the identity of the informer would have been "of no service in an attempt to establish appellant's innocence, but it would have affected the public welfare adversely." People v. Gonzales, 1956, 141 Cal.App.2d 604, 297 P.2d 50, 52.

■ Appellant complains of the denial of his pretrial motion to inspect and copy the laboratory report, chemical tests and other technical processes by which the powder seized was examined, the police report of December 9, 1966, and other police reports relating to the surveillance, investigation and arrest of defendant.

In State v. Aubuchon, Mo.Sup., 381 S. W.2d 807, this Court laid down these guidelines: There is in this state no general right of discovery in criminal cases. The files of the State are not to be opened up, carte blanche, to a defendant. In order to require production of a police report there must be "a satisfactory showing that a report * * * is of such nature that *without it,* the defendant's trial would be fundamentally unfair * * *." This is a discretionary decision resting in the first instance with the trial court, with which we may later interfere if the trial court abused that discretion.

■ The reason assigned in appellant's motion to require the production of these reports was that they were official business records of the police department— original evidence admissible under the Uniform Business Records Act. The reasons assigned on this appeal are different. Appellant now claims that by denying him access to the laboratory report, etc. he was prevented from properly preparing his cross-examination of the criminologist who analyzed the drug. This complaint is not amplified or substantiated. Examination of the 6-page cross-examination of the criminologist does not indicate that appellant's counsel was handicapped in making the examination or that appellant suffered from lack of preparation therefor. On the contrary the inquiry of the witness by counsel was intelligent, complete and searching.

Appellant now makes the further claim that by denying him access to the police reports of the pre-arrest surveillance and the arrest, and in overruling his motion to produce "any and all favorable evidence to defendant," he was denied a fair trial, under the rule of Brady v. Maryland, 373 U. S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, that suppression or withholding by the State of material evidence in its possession exculpatory to an accused who has requested it is

violative of due process where the evidence is material either to guilt or punishment. In Brady appellant obtained reversal of his conviction on the basis of the suppression of a particular paper writing. The paper in question was an extrajudicial statement by his companion admitting the actual killing with which appellant was charged, which statement *came to his notice* after he had been convicted of first degree murder. In the case here for review appellant does not specify any particular fact, report, paper or document the withholding of which is claimed to have violated his rights. He merely surmises that "there could very well be contradictory evidence in the Police Report and Surveillance Memorandum which would be helpful to the defendant in his defense * * *." It is apparent from this record that these motions were based not upon fact but upon hope, anticipation and expectation that some contradictory fact or facts might thus be exposed, upon the basis of which the state's case might be weakened or its witnesses impeached. There was no "satisfactory showing that a report or statement of a witness in the hands of the State [was] of such a nature that *without it,* the defendant's trial would be fundamentally unfair * * *"; no showing that documents in the hands of the police would impeach the testimony of the state's witnesses, as required by Aubuchon; and no showing of the probable materiality of any paper in the hands of the prosecution, as required by State v. Crayton, Mo.Sup., 354 S.W.2d 834; State v. Simon, Mo.Sup. (en banc), 375 S.W.2d 102; State v. Hinojosa, Mo.Sup., 242 S.W.2d 1; State v. Gilliam, Mo.Sup., 351 S.W.2d 723; State v. Aubuchon, supra, 381 S.W.2d, l.c. 814. It is obvious that by filing these motions appellant was attempting to discover material evidence favorable to him. As we ruled in Aubuchon and again last month in State v. Coleman, Mo.Sup., 441 S.W.2d 46, there is no general right of discovery in criminal cases in this state. No discovery rules have been prescribed or authorized by rule or statute in such cases. The record dis-closes no sufficient reason for the production of these papers and records. The motions were in the nature of fishing expeditions. State v. Blevins, Mo.Sup., 421 S.W.2d 263, 268. Under the previous rulings of this court there was no abuse of discretion in overruling them.

Conceding that we held in Aubuchon that Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, is not controlling in prosecutions in state courts, appellant asks for a reappraisal of this ruling, and for a holding that an accused is not required to lay a preliminary foundation showing an inconsistency between the written reports and the testimony of the witnesses for the prosecution, where a sufficient foundation was established by their testimony that the reports related to events about which they had testified. He argues that to require an accused to first show a conflict between the reports and testimony is in actuality a denial to the accused of evidence material and relevant to his defense. We have reconsidered the question and conclude that the reasons for a contrary ruling given by the Supreme Court of Indiana and approved by this court in Aubuchon, supra, 381 S.W.2d, l.c. 815, are sound and salutary. We reaffirm our 1964 ruling on this question.

▓ Appellant's next complaint is that the venire should have been discharged when prior to examination on voir dire appellant was "paraded" past the veniremen while handcuffed. In view of the fact that the judgment must be reversed for another reason we need not decide the point, but on retrial of this case the law enforcement officers should not permit this to happen unless good reason develops for keeping the defendant in shackles. State v. Boyd, Mo. Sup., 256 S.W.2d 765, and cases cited.

▓ The judgment of conviction must be reversed for error in sustaining the state's objections to the reading of portions of the deposition of Frankie Williams indicating that she, not this appellant, made the sale which is the subject of this prose-

cution. Frankie Williams' deposition was taken in this case by appellant's counsel. In that deposition, after testifying that she knew appellant and that he was with her on December 9, 1966 when she was arrested, Frankie Williams testified further that appellant was in the room with her 20–30 minutes prior to the arrest; that he came to pick up some money to send his daughter to Kansas City for Christmas; that "during the time [she] was giving him the money * * * the man that [she] was dealing with * * * came in and [she] got [her] stuff, and * * * [she] was transacting business"; that [appellant] was "sitting around"; that she told appellant to wait; that maybe she could get a little more money so that he would have enough to buy a round-trip ticket; that while he was waiting the police came; that she was present in that room at all times while appellant was present, from the time he arrived until the time he was arrested, and that she at no time saw appellant "make any sale of anything, a packet, a bottle, envelope, anything, to anybody while he was in that room." When placed on the stand Frankie Williams on advice of counsel refused to testify on the ground of self-incrimination. When appellant's counsel sought to use the deposition the court sustained the state's objection that the deposition was incompetent, irrelevant and immaterial. Appellant's counsel offered to read to the jury the questions and answers contained in the deposition to which offer the state objected on the ground that there is no provision in the law for admitting a deposition of a witness who is present in court and able to testify in person. The court sustained the objection. (It was stipulated that the deposition sought to be used was a true, accurate copy of the witness' testimony.)

Section 492.400 RSMo 1959 specifies six situations in which depositions may be read and used in evidence as if the witness were present and examined in open court. They are situations of unavailability, such as residence outside the state, death, physical inability to attend court, uncontrived absence, etc. When Frankie Williams invoked the privilege against self-incrimination at the trial she made herself as unavailable as if she were dead or gone out of the state. When the testimony of a witness, produced in open court to testify for a defendant, becomes unavailable to defendant because the witness invokes his constitutional privilege against self-incrimination, a necessity arises for the admission of his previously given testimony from a secondary source, in order that defendant may be accorded a fair trial. In such case the witness is unavailable as a practical matter and his testimony should be received. Wigmore on Evidence, 3rd Ed., § 1456; Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284; Anno.—Claim of privilege by a witness as justifying the use in criminal case of his testimony given on a former trial or preliminary examination, 45 A.L. R.2d 1354. The reasons are well-stated in State v. Stewart, 85 Kan. 404, 116 P. 489: "His refusal to testify viva voce at the trial made the information which he had formerly given as inaccessible to plaintiff as if he had been dead or out of the jurisdiction of the court. It is sometimes said that the testimony of a witness at a former trial cannot be read if he is present at the trial, but its admissibility does not depend so much on the presence or availability of the witness as it does on the availability of the testimony; and the testimony of Stewart was just as unavailable as if he had walked over the state line, where process could not be served upon him. * * * If a witness cannot prevent the use of his testimony by stepping outside the jurisdiction of the court, or the acquiring of an interest, or other act which disqualifies him as a witness, it would appear that he cannot defeat the use of testimony given when he was competent, and which was reduced to writing, by claiming a statutory privilege and refusing to testify viva voce when called to the witness stand." On a new trial the deposition of Frankie Williams, if offered, shall be received in evidence.

Because of the exclusion of the deposition the judgment of conviction and sentence is reversed and set aside and the cause is remanded for a new trial.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., and STORCKMAN, J., concur.

SEILER, J., concurs in result in separate opinion filed.

SEILER, Judge (concurring in result).

I concur in the result reached by the main opinion in reversing and remanding for a new trial by reason of the error in the exclusion of the Frankie Williams deposition.

However, I must respectfully disagree with that portion of the opinion which upholds the refusal of the trial court to require the state to produce evidence favorable to the defendant.

Under the law as declared in State v. Thompson (Mo.Sup. banc) 396 S.W.2d 697, 700, following Brady v. Maryland, 373 U. S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and in Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737, "* * * the suppression of (or failure to disclose) evidence in the possession or control of the prosecution which is favorable to defendant and which might be persuasive to a jury, constitutes such a fundamental unfairness as to invalidate a conviction because violative of due process. * * *" The first essential of the rule is the existence of favorable evidence in the hands of the prosecution. If the evidence exists it does so regardless of whether defendant knows of it. There-

fore, we should not decide the question as to error in refusing defendant's motion to produce evidence favorable to him on whether he is able to specify in advance what he wants. Whether he is attempting a "fishing expedition" or knows exactly what the police have does not change the basic constitutional principle that the prosecution cannot fail to disclose favorable information and that if it does, the failure will invalidate the conviction.

Assume for example, that defendant is charged with murder and that his defense is that he acted in self defense. Assume further that entirely unknown to defendant there was an eye witness across the street at an upstairs window who saw the entire affair and who would testify to facts which would show that defendant was acting in self defense. Suppose that the police have the name of this witness and a statement from him. In this example if the defendant moved for production of any evidence in the police files which was favorable to him he would be acting merely on hope and without being able to demonstrate any basis for his application. Yet it would be a miscarriage of justice not to make available to defendant a witness who might establish his innocence.

We say failure to disclose favorable evidence is not consistent with due process, but in practice we qualify the rule by not forcing the prosecution to live up to it unless defendant can specify what it is the prosecution is withholding that is favorable.

Therefore, it seems to me that we must make effective the constitutional right which the defendant has not to be convicted without due process by requiring the prosecution, on motion, to produce the file for the inspection in camera by the trial judge. The trial judge can examine the file and order production of evidence in the possession or control of the prosecution which is favorable to the defendant and which might be persuasive to a jury. This does not mean that the prosecution need

open its file to the defendant but it does mean that the defendant can have the protection of an impartial judge looking at the prosecution's file and seeing that defendant's constitutional rights are protected in this regard.